**PAYNE, Agent, v. NORMAN.   (No. 2707.)**

(Court of Civil Appeals of Texas. Texarkana. March 1, 1923.)

1. **Carriers ⬥408(5)—Members of family on whose ticket single lost trunk is checked held entitled to recover total value of baggage which each may check if contents exceed such amount.**

Under an interstate carrier's tariff and rules providing that 150 pounds of baggage not exceeding $100 in value may be checked for each adult passenger, and 75 pounds not exceeding $50 in value for each child traveling on a half ticket, and permitting a single trunk, containing articles belonging to different members of a family, to be checked without excess charge, if not exceeding the total weight to which the tickets held by the members of the family entitled them, two adults and a child, whose baggage was contained in one trunk checked on the tickets of all of them, can recover $250 for the loss of the trunk, if the value of its contents exceeded that sum.

2. **Carriers ⬥395 — Members of same family may carry baggage in same trunk.**

Members of the same family, traveling together, may carry their baggage in the same trunk, or one may carry in his trunk the baggage of another, and there may be a recovery for the loss of the baggage of each.

3. **Carriers ⬥395—Check is not contract for transportation of baggage.**

The fact that only one check was given for a trunk which was checked on the tickets of three members of a family is immaterial, since the check does not embody the contract of transportation, but is a receipt merely intended to afford evidence of ownership and for identifying the baggage.

4. **Carriers ⬥408(2)—Holder of check can sue for entire loss, where trunk contained baggage of family.**

The holder of the single check for a trunk containing the baggage of the members of a family which was lost can sue for the entire loss, and a judgment for him would protect the carrier against recovery by other members of the family.

Appeal from Hunt County Court; Ollin P. McWhirter, Judge.

Action by W. F. Norman against John Barton Payne, Agent. Judgment for plaintiff, and defendant appeals. Affirmed.

This suit was by appellee to recover the value of a trunk and its contents checked as baggage at Los Angeles, Cal., to Greenville, Tex. The value is alleged to be $839.05. The defense is that in no event can there be a recovery for more than $100, because the passenger did not declare a higher valuation nor pay charges for an increased valuation over that sum, and the defendant had duly filed with the Interstate Commerce Commission, and published, a tariff concerning the transportation of baggage. The case was submitted to a jury on special issues; and, based upon their findings, the court entered judgment in favor of the appellee for $250 and interest, aggregating $283.50.

It was agreed by the parties that the evidence admitted to the trial of the case was sufficient to establish the following facts:

"1. That Wednesday, September 3, 1919, M. B. Harrell of Greenville, Texas, with his wife, little daughter, Martha, and his minor brother, Lynn Harrell, were stopping at a hotel

---

in the city of Los Angeles, Cal.; that on that day they were returning to their home and had all the baggage belonging to the four packed in one trunk. As transportation, Mr. Harrell had a ticket for his brother, Lynn, for the entire trip from Los Angeles, Cal., to Greenville, Tex., over the Southern Pacific to El Paso; thence over the Texas & Pacific to Fort Worth; thence over the St. Louis Southwestern Railway Company of Texas to Greenville. Desiring to have this trunk checked, he gave this ticket to the clerk of the hotel in Los Angeles and requested him to have the trunk hauled to the depot and checked on the ticket, through from Los Angeles to Greenville. When Mr. Harrell was preparing to leave the hotel, he asked the clerk for his baggage check and was then informed that the trunk had been hauled to the Southern Pacific depot, but that the baggage agent there refused to check the trunk because of overweight. Mr. Harrell had purchased a ticket for his brother and he then took this brother's ticket, went to the depot and on arrival found his trunk on the scales, and, when questioned by him, the baggage agent said that the trunk was too heavy to go as baggage on one ticket. Mr. Harrell had and then exhibited to the baggage agent transportation for himself and members of his family, as follows: A ticket for himself to El Paso, Tex., over the Southern Pacific, and annual pass issued to him over the Texas & Pacific from El Paso to Fort Worth, and an annual pass issued to him over the St. Louis Southwestern Railway Company of Texas from Fort Worth to Greenville, also tickets for his wife and daughter from Los Angeles, Cal., to El Paso, over the Southern Pacific, and from El Paso to Fort Worth over the Texas & Pacific, and an annual pass issued to his wife and daughter over the St. Louis Southwestern Railway Company of Texas from Fort Worth to Greenville. On presenting this bunch of tickets and annual passes, the baggage agent stated that he had sufficient transportation to permit the trunk to be checked through from Los Angeles to Greenville, as the joint baggage of all whose transportation was exhibited, and the baggage was accordingly checked, and the check issued, that is, from Los Angeles to Greenville over the Southern Pacific to El Paso, thence to Fort Worth over the Texas & Pacific, thence to Greenville over the St. Louis Southwestern Railway Company of Texas. Mr. Harrell and his family and brother arrived in Greenville Friday night, September 5th, and on Saturday morning, September 6th, he delivered the baggage check to Mr. Frank Wolfe, who was engaged locally in transportation, and requested him to haul the trunk to his home in Greenville. Frank Wolfe delivered the check to W. F. Norman, the plaintiff, who was also engaged in the transportation business and who undertook to procure the baggage and deliver same to Mr. Harrell. Mr. Harrell never received his trunk and the same and the contents were all entirely lost. Later, the plaintiff, W. F. Norman, paid Mr. Harrell three hundred and fifty odd dollars, and Harrell thereupon transferred his claim against the defendant for the loss of the trunk and baggage to the plaintiff by regular assignment, and it is upon this that the plaintiff instituted this suit. Lynn Harrell, the brother of M. B. Harrell, was a minor and was in the custody and charge of M. B. Harrell and his personal effects were carried in the trunk with the baggage of Mr. Harrell, his wife, and daughter, and were all under Mr. Harrell's control. M. B. Harrell is not the guardian of his brother. Lynn is not a member of the family of M. B. Harrell, but resides with their mother, in Greenville, who supports him, and she permitted Lynn to take this trip with his brother, and for that purpose only he and his personal effects in the trunk were under the control of M. B. Harrell during the trip.

"2. The evidence was sufficient to show that the trunk contained items of baggage personal to M. B. Harrell of the reasonable value at the time and place they were lost of $123; that the trunk contained items of baggage personal to Mrs. Harrell, his wife, of the reasonable value of $383.10, and of baggage personal to their minor daughter, Martha, $163.45, and baggage belonging to Lynn Harrell of the reasonable value of $144.50; and that the trunk was of the reasonable value of $25.

"3. That the evidence was sufficient to show that the trunk of M. B. Harrell was received by the defendant's agents at Greenville, Tex.; that it was never delivered by the defendant's agent to the plaintiff, Norman; that the defendant's agents failed to exercise ordinary care to deliver the trunk to Mr. Harrell or to his agents; that the trunk was delivered by the defendant's agents to some one at Greenville, on September 6, 1919, but the baggage check was not surrendered to the defendant's agents at the time of the delivery; that the plaintiff, W. F. Norman, lost the baggage check and same was never presented to the baggage agent of the St. Louis Southwestern Railway Company of Texas, at Greenville, and the baggage was not delivered to any person presenting the check.

"4. The evidence was sufficient to show that there was in force and effect, during the month of September, 1919, and covering the time of these transactions, local and joint tariff and traffic rules and regulations of baggage rates and charges, applied at and between all stations on the lines of the St. Louis Southwestern Railway Company of Texas, the Southern Pacific, and the Texas & Pacific Railroads, the carriers over whose railroads the baggage in question was transported from Los Angeles, Cal., to Greenville, Tex.; that the tariff had been filed with the Interstate Commerce Commission by the Director General of Railroads, under authority of the Acts of Congress of the United States, and was approved and promulgated by the Interstate Commerce Commission and duly posted by the St. Louis Southwestern Railway Company of Texas, at Greenville, in compliance with the order of the Commission and Acts of Congress."

Mr. Harrell did not, at the time the baggage was checked, make any declaration as to the value of the baggage, or as to the ownership thereof. The tariff and traffic rules and regulations concerning baggage rates and charges filed with the Interstate

.Commerce Commission contain, among other things, the following provisions, to wit:

"Rule 1. (a) Baggage checks will be issued for articles authorized herein upon presentation by the owner of valid transportation, only when the owner of the property is also the owner of the transportation, and is a bona fide passenger over the same line to or beyond the destination of the baggage. When a combination of tickets or passes is presented forming complete and valid transportation from starting point to destination, if the route is via a junction point where wagon transfer is necessary agents will collect the prescribed charge for such transfer on each piece of baggage.

\*    \*    \*    \*    \*    \*    \*

"(c) Baggage must not be checked on borrowed tickets or for two persons or more jointly (except members of the same family) unless passengers can prove to the satisfaction of baggage agent that they own the baggage jointly."

"Rule 10: (a) Subject to limitations shown in rule 9, one hundred and fifty (150) pounds of baggage, not exceeding one hundred dollars ($100.00) in value, may be checked without additional charge for each adult passenger, and seventy-five (75) pounds, not exceeding fifty ($50.00) dollars in value, for each child traveling on a half ticket. No allowance will be granted on borrowed tickets, fares paid on trains after baggage has been checked, tickets purchased for the sole purpose of avoiding payment for excess baggage or tickets for two or more persons (except members of the same family) unless passengers can satisfy agent that they are joint owners of the baggage.

"(b) Passengers paying charges prescribed in rule 11 (b) for excess weight baggage will be entitled to an additional value allowance of 66 2-3 cents for each pound of excess weight on which charges are paid. (See table B herein.) This additional value allowance will not be granted to passengers traveling on around the world and trans-Pacific tickets.

"Rule 11: (a) Baggage or property which may be transported in regular baggage service, exceeding the weight, size, or value stated in this rule and in rules 5, 6, and 10, will be charged for as excess baggage as follows:

"(b) *Excess Weight.* Excess weight rates will be based on the adult normal one way fare via route of ticket and not on temporarily reduced, special, party, scrip, commutation or excursion fares.

\*    \*    \*    \*    \*    \*    \*

"(d) *Excess Value.* Unless a greater sum is declared by a passenger and charges paid for excess value at time of delivery to carrier, the value of property belonging to, or checked for, a passenger, shall be deemed and agreed to be not in excess of the amounts specified in rules 5, 6, and 10, and the carriers issuing and participating in this tariff will not accept claim for a greater sum in case of loss or damage. If passenger declares according to the form prescribed by checking carrier, a greater value than specified in the rules mentioned in the preceding paragraph, there will be an additional charge at the rate of ten (10) cents for each one hundred dollars ($100.00) or fraction thereof, above such agreed maximum value. Minimum charge ten (10) cents. Charges for ex-

cess value should be prepaid whenever possible and are separate and distinct from the charges for excess weight and size.

"(e) When excess baggage collections are made, an excess baggage check will be issued as a receipt for the amount paid, and as a check for one piece of baggage. Only one excess baggage check will be issued on any one lot of baggage, and local or interline checks will be used for the other pieces."

B. F. Crosby and Looney & Bowman, all of Greenville, and E. B. Perkins, of Dallas, for appellant.

Clark & Sweeten and Allen Clark, all of Greenville, for appellee.

LEVY, J. (after stating the facts as above). The question on appeal is the amount of damages recoverable by the appellee. It appears that the amount of $250, for which the court entered judgment for the appellee, is made up as follows: (a) $100, the value of the personal effects of M. B. Harrell; (b) $100, the value of the personal effects of Mrs. Harrell; (c) $50, the value of the personal effects of their little girl, Martha. The appellant contends that the court erred in rendering judgment for more than $100 and interest thereon, because only one contract was consummated and only one contract breached by the railway company, and the terms of the published tariff apply to only one piece of baggage, or one trunk and its contents, which the family took wtih them on their journey. In other words, only $100 should be allowed for the baggage of all three members of the family.

[1] It has been held that a carrier in interstate commerce, by publishing a tariff in accordance with the act of Congress, may limit its liability for loss of baggage or effects to not exceeding $100, in cases where the passenger fails to declare a higher value and to pay the excess charge at the time of the delivery of the baggage to the carrier. Ry. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593. See Ry. Co. v. Hailey (Tex. Civ. App.) 156 S. W. 1119. The difference between the Hooker Case, supra, and the instant case lay in a simple, unmixed fact only. In the Hooker Case there was only one passenger having a trunk checked for the trip, while in the instant case the one trunk used by a family on their journey was checked on the tickets of all three members of the family. The trunk was too heavy to be checked on one ticket without charges for additional weight. The difference in the facts of the two cases, however, is, we believe, quite immaterial, for the facts of the instant case bring it also well within the terms of the published tariff and under the law as construed in the Hooker Case. It is to be borne in mind that only $100 each was allowed to the mother and father, and $50 to the child.

According to rule 10 of the published tariff in evidence, "each adult passenger" is expressly allowed to check, "without additional charge," 150 pounds of baggage, and "each child traveling on a half ticket" is allowed to check 75 pounds of baggage, on the trip that they commence. And, according to further terms of the published tariff, baggage may be checked by two or more persons "jointly" (meaning unitedly) if they (1) "are members of the same family," or (2) "can prove to the satisfaction of the baggage agent that they own the baggage jointly."

[2-4] While nothing is said in the tariff of the container, or trunk, whether one or more, that the said "family" or the said group of passengers may use on the journey to hold their baggage or effects, still it was evidently the intention to authorize and allow the joint use of one trunk by them. The meaning and purpose of the tariff is apparent that, for example, two "adult" passengers may check 300 pounds of baggage in one trunk without additional charge, or a family traveling together may check their baggage in one trunk to the full authorized and allowable weight, according to the number and age prescribed, without additional charge. Therefore the published tariff may properly be construed to allow the very things done in the instant case, viz., to allow the baggage or effects of the husband and the wife and their child to be in one trunk and to be checked on the three tickets of the said family, to the extent, as here, of the authorized weight allowed the three persons named, without additional charge. It has long been the rule that members of the same family, traveling together, may carry their baggage in the same trunk, or one may carry in his trunk the baggage of another and that there may be recovery for the loss of the baggage of each. Ry. Co. v. Baldwin, 113 Tenn. 205, 81 S. W. 599; Brick v. Ry. Co., 145 N. C. 203, 58 S. E. 1073, 22 Am. St. Rep. 440, 13 Ann. Cas. 328; 10 Corpus Juris, 1189. The father may recover for the loss of baggage belonging to his infant daughter, and as husband may recover for the loss of the wearing apparel of the wife. Baltimore Steam Packet Co. v. Smith, 23 Md. 402, 87 Am. Dec. 575; 10 C. J. 1231. The fact that one check only was given to M. B. Harrell would be immaterial, for the usual baggage check delivered to a passenger does not embody the contract of transportation, but is a receipt merely, intended to afford evidence of ownership and for identifying the baggage. Isaacson v. Ry. Co., 94 N. Y. 278, 46 Am. Rep. 142; 10 C. J. 1199. The contract was for the transportation of the baggage of the three members of the family. Mr. Harrell, as holder of the check and with whom the contract was primarily made, was entitled, as consignee as well as upon the contract made with him, to sue for the performance of the entire contract. The railway would be protected by such judgment. The contentions made by appellant should, we conclude, be overruled.

The judgment is affirmed.