Hillsborough,
May 3, 1921.

### ELIAS OSTROFF v. JAMES H. HUSTIS, Receiver.

Under the act of congress of June 29, 1906 (34 U. S. Stat. 584), the initial carrier is responsible for the safe delivery of goods accepted for interstate transportation though loss occurs through the fault of a subsequent carrier; and a bill of lading requiring the giving of notice "to the originating or delivering carrier," in case of failure to deliver, is valid.

ASSUMPSIT, to recover the value of a case of woollen goods shipped by the Amoskeag Manufacturing Company over the defendant's railroad to Philadelphia, and which arrived in that place over the Pennsylvania railroad.

There was a trial by the court and verdict for the defendant, to which the plaintiff excepted. Transferred from the January term, 1920, of the superior court by *Kivel*, C. J.

*Patrick H. Sullivan* and *Albert H. White*, for the plaintiff.

*Warren, Howe & Wilson*, for the defendant.

PLUMMER, J. The case was heard by the court upon depositions taken and introduced by the plaintiff. The defendant offered no evidence and did not question the credibility of the plaintiff's proof. It was in effect conceded that the goods for which suit was brought

were shipped from Manchester, N. H., over the defendant's railroad to Philadelphia, and that they arrived in Philadelphia over the Pennsylvania Railroad, which failed to deliver them to the plaintiff consignee. In such an interstate shipment liability is determined by the federal law, which is: "When the holders of the bills of lading proved the goods had not been delivered to the consignee, the presumption arose that they had been lost by reason of the negligence of the carrier or its agents. The burden of proof that the loss resulted from some cause for which the initial carrier was not responsible in law or by contract was then cast upon the carrier. The plaintiffs were not obliged both to prove their case and to disprove the existence of a defence. The carrier and its agents, having received possession of the goods, were charged with the duty of delivering them, or explaining why that had not been done." *Galveston &c. Ry. Co.* v. *Wallace*, 223 U. S. 481, 492.

The bill of lading provided that in case of damage or loss in transportation "as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property . . . or, in case of failure to make delivery, then within six months . . . after a reasonable time after delivery has elapsed."

Such a provision requiring the giving of notice as a condition precedent to recovery is valid. *Higgins* v. *Railroad*, 78 N. H. 609. The plaintiff's evidence proved and it was conceded, that claim for the loss was duly made to the Pennsylvania Railroad, the delivering carrier. The defendant contended that, if such notice authorized a suit against such delivering carrier, it did not sustain a suit against the defendant, the initial carrier, and the court found a verdict for the defendant, subject to exception by the plaintiff. The question of law upon which the parties are at issue is clearly presented by the case, and as it is understood to have determined the verdict, convenience in procedure appears to require its consideration without stopping to inquire whether the transfer upon the plaintiff's exception to the verdict is technically the proper method for its presentation to this court. *Petition of Moebus*, 73 N. H. 350, 351; *Hutchinson* v. *Railway*, 73 N. H. 271, 277.

The Carmack amendment to the Hepburn act provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or

injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed." Act of June 29, 1906; 34 U. S. Statutes at Large, 584.

"The indisputable effect of the Carmack amendment is to hold the initial carrier engaged in interstate commerce and 'receiving property for transportation from a point in one State to a point in another State' as having contracted for through carriage to the point of destination, using the lines of connecting carriers as its agents. . . . In substance Congress has said to such carriers, 'If you receive articles for transportation from a point in one State to a place in another, beyond your own terminal, you must do so under a contract to transport to the place designated. If you are obliged to use the services of independent carriers in the continuance of the transit, you must use them as your own agents and not as agents of the shipper.'" *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186.

By this legislation and the construction put upon it, the initial carrier is made responsible for the safe delivery of goods accepted by it for transportation. The condition precedent to the maintenance of a suit for the loss in this case, notice to the delivering or originating carrier, was strictly complied with by notice to the Pennsylvania Railroad. No ground is perceived for the claim that notice must be given to the initial carrier who is primarily responsible. It is not so nominated in the bond. Furthermore, the act itself taken in connection with the interpretation placed upon it by the above case makes it clear that the initial carrier constitutes as his agent any connecting carrier to whom he may deliver merchandise for transportation.

At common law, notice to an agent relating to a matter within the scope of his employment is notice to his principal, and the principal is charged with all facts known to his agent. *Hovey* v. *Blanchard*, 13 N. H. 145; *Patten* v. *Insurance Co.*, 40 N. H. 375; *Tasker* v. *Insurance Co.*, 59 N. H. 438, 445; *Clark* v. *Marshall*, 62 N. H. 498; *Perry* v. *Insurance Co.*, 67 N. H. 291, 295; *Johnson* v. *Casualty Co.*, 73 N. H. 259. Moreover, it is expressly held in cases arising under the Carmack amendment, as does the present, that notice to any of the connecting carriers is a compliance with a stipulation requir-

ing notice to the initial carrier. *Chicago, R. I. & G. Ry. Co.* v. *Linger* (Tex.), 156 S. W. Rep. 298; *Overton* v. *Chicago, R. I. & G. Ry. Co.* (Tex.), 160 S. W. Rep. 111; *Galveston H. & S. A. Ry. Co.* v. *Itule* (Tex.), 172 S. W. Rep. 1123; *Norfolk & W. R. Co.* v. *Steele*, 117 Va. 788. This conclusion is supported by the reasoning in *Northern Pac. Ry.* v. *Wall*, 241 U. S. 87.

   *Exception sustained: verdict set aside: verdict and judgment for the plaintiff.*

All concurred.

---

MEMORANDUM

On the twelfth day of April, 1921, MR. LESLIE PERKINS SNOW was appointed an associate justice of the court to fill the vacancy occasioned by the retirement of Mr. Justice WALKER, and took his seat upon the bench at the May session, 1921.