HAMILTON FOODS, Inc. v. ATCHISON, TOPEKA & SANTA FE RY. CO. et al.

Civ. No. 6835-Y.

United States District Court
S. D. California, C. D.
March 16, 1948.

Albert H. Allen and Hyman Goldman, both of Beverly Hills, Cal., for plaintiff.

Leo E. Sievert, J. H. Cummins, Louis M. Welsh, and Frederic A. Jacobus, all of Los Angeles, Cal., for defendant Railway Company.

CAVANAH, District Judge.

In Case No. 6835, heretofore submitted to the court, being the case of Hamilton Foods, Incorporated, against the Atchison, Topeka and Santa Fe Railway Company, the court has reached the conclusion that the principles of law applicable are, first, that where damages are claimed by reason of loss of or injury to property entrusted to a common carrier for transportation, the burden rests upon the plaintiff to establish by a preponderance of the evidence the delivery of the property to the carrier; and where the action is founded upon negligence, the burden rests upon the plaintiff to show that the shipment was delivered to the carrier in good condition or order.

When the plaintiff has made out a prima facie case of liability, the burden then rests upon the carrier to rebut that prima facie case.

When proof is given by the plaintiff that property delivered to a common carrier in good condition was damaged while in the hands of the common carrier, a presumption arises that the damage was due to negligence and the burden of proof is upon it to show that it was free from negligence or that notwithstanding its negligence the damage occurred without its fault—that is, the negligence did not contribute to the damage.

The rule of perishable protective tariff approved by the Interstate Commerce Commission, is that if the goods arrive at the place of delivery in bad condition which was caused by lack of ordinary care on the part of the carrier, it is liable; but a compliance with it is a defense against a charge of negligence. In other words, the measure of the duty of the carrier was to use reasonable, ordinary diligence. Under the protective tariff application shippers of perishable property must show that there was a lack of ordinary care on the part of the carrier.

The carrier is not an insurer. Forty cases of the shipment arrived in damaged condition.

The bill of lading, which was the one that is applicable here, provides that they must use 13,000 pounds of ice and 30 per cent salt in the cars in which the goods were shipped.

Now, when the car arrived here for delivery the defendants were notified of its arrival. It sent an agent there to receive the delivery, which was a local concern in Los Angeles who had a refrigerated truck.

This party arrived. He opened the door of the car. He then closed it and went and got a thermometer. He says he placed it in the end of the car and that the temperature was 54 degrees. He then placed the thermometer under the cases involved, which contained the shrimp creole, and it registered 50 degrees.

He removed 550 cases and disposed of them in this city, and no complaint was made as to their damage. In other words, they were in good condition.

The remaining 450 cases, 40 of which is the only direct proof were in a damaged condition at that time, of which they made a physical examination, and the witness said he struck his finger through the cases,

and into the shrimp, and that they were soft.

He then took the remaining 410 cases in his refrigerated truck and conveyed them to San Francisco, and there they discovered they were in a bad and damaged condition.

Now, the court is called upon to reason out these circumstances: Did the shippers' own act when its agent went to this car and opened it up and closed it and then went over and got a thermometer, came back and opened the car up again, did that expose this shipment to such condition that it no doubt brought about the damage to the remaining 410 cases; also, transporting it from here to San Francisco. Did those acts of the shipper, after receiving the goods at the car, broke the seal, received it, went in and took possession and handling of this shipment, was the real cause of the damage.

I feel that the railroad company has complied with the protective tariff regulations in the bill of lading under which it was governed in delivering this shipment on its track here in Los Angeles, and there is no evidence to show that the 25 to 40 cases were in really damaged condition. The shipper relying upon his thermometer which he placed in the car, opening up the door, and exposing this shipment, which the witnesses all testified as soon as the doors were open a gush of cold air came out of the car, which is natural.

Now, it is hard, and you cannot contribute after the shipper took possession of this car, to say that when the shrimp arrived in San Francisco nothing placed it in that condition. The physical facts show that was the case.

A physical examination of the 40 cases showed they were bad, and at $9.90 a case, that would be $360 plus the freight. So, the court reached the conclusion that the plaintiff can recover $360, plus the freight, on those 40 cases, against the defendant, so findings and decree will be prepared by the plaintiff according to the views expressed.

United States District Court
S. D. California, Central Division.
May 20, 1947.

