KIRCHNER, APPELLEE, *v.* NEW YORK CENTRAL SYSTEM, APPELLANT.

(No. 743—Decided November 28, 1949.)

*Messrs. Bowman, Hanna & Middleton,* for appellee.
*Mr. Alva W. Bachman,* for appellant.

FESS, J.   This is an appeal on questions of law from a judgment entered on a verdict for plaintiff-appellee in the sum of $2,053.07.   No assignments of error were filed by defendant-appellant, but in the absence of a motion to dismiss, this court is confronted with the bur-

den of determining by a review of the briefs and bill of exceptions whether any prejudicial error intervened at the trial.

The first cause of action in the petition alleges that plaintiff was advised by the station agent of the defendant that a carload of sweet cream leaving Bowling Green at 3:40 p. m. on June 9, 1947, would arrive at Norfolk, Virginia, at 4:10 p. m. on June 10, 1947, but the shipment was not delivered by defendant *as promised*; that by reason of such delay, occasioned by the defendant, the cream soured, resulting in damage in the sum of $5,116; that the sour cream was later sold at Cleveland, Ohio, for $3,407.93, leaving net damages to plaintiff of $1,708.07 plus freight charges paid by plaintiff in the amount of $345; and that by payment of the freight charges plaintiff was entitled to the safe carriage and transport of the merchandise.

For his second cause of action, plaintiff claims $302 paid for freight on reshipment of the sour cream from Norfolk to Cleveland necessitated by the negligence of the defendant in the handling of the merchandise on the carriage and the violations of the promises of the defendant as to the time of delivery.

For his third cause of action, plaintiff claims $43 for telephone calls incident to the reshipment of the cream and mitigation of damages.

Strange to relate, no motion or demurrer was filed by the defendant. The answer admits the shipment, denies negligence in transportation, and alleges that if damage resulted it was due to negligence of plaintiff in not employing proper methods used by shippers of sweet cream for transportation during hot weather.

Plaintiff testified that the station agent of the defendant told him the car of cream would arrive at Norfolk at 4:10 p. m. the following day, but did not testify that the agent said that the car would arrive at the sidetrack of the consignee at such time. It is apparent

from the testimony that the station agent consulted the passenger time table and indicated that the fast passenger train to which the car was to be attached would arrive at Norfolk at 4:10 p. m., as indicated by the passenger train schedule. It appears from the testimony that, as a result of a previous arrangement between the consignee and the connecting carrier, the car of cream was detached from the passenger train of the connecting carrier at Newport News and following the normal route of transportation by the connecting carriers was delivered at the sidetrack of the consignee some time during the morning of June 12. An official of the consignee, testifying on behalf of the plaintiff, said that the purchase order stipulated the date of delivery and also that the shipment was to be delivered to its plant in Norfolk, Virginia. The consignee accepted the shipment and unloaded the cans of cream into the cooler of its plant on June 12, but notified plaintiff during the morning of June 13 that 200 of the 256 cans of cream were sour and could not be used for the manufacture of ice cream. Upon instruction from the plaintiff, the 200 cans of sour cream were reshipped via The Norfolk & Western Railway Company and the defendant, as connecting carriers, to Cleveland, Ohio.

In answer to interrogatories, the jury found that the defendant and its connecting carriers, or one of them, were negligent, and that the negligence causing the loss was "failure to supply necessary information to consignor at initial shipping point regarding total time required for final delivery to Southern Dairies Plant."

Evidence on behalf of the plaintiff tended to show that 256 cans of sweet cream were delivered to the defendant at Bowling Green, that the car was properly iced, and that, within 24 to 36 hours after delivery to the siding of the consignee, the cream was sour. Under

the Carmack Amendment (Section 20 [11], Title 49, U. S. Code), the defendant was liable for loss, injury or damage caused by it or any connecting carrier. Plaintiff thereby established a prima facie case of liability of the defendant or its connecting carriers.

The uncontradicted evidence of the defendant indicated that the carload of cream was delivered to the Chesapeake & Ohio Railway Company at Columbus, Ohio, where it was attached to the "Sportsman" and arrived at Newport News a few minutes behind the passenger schedule. Instead of accompanying the passenger train to the passenger station at Norfolk, the car of cream was detached at Newport News and, following a circuitous route via car ferry, Norfolk & Portsmouth Belt Line and The Norfolk & Western Railway Company, was delivered at the siding of Southern Dairies on the morning of June 12. There was no direct connection from the Chesapeake & Ohio Railway Company freight or passenger station to the siding of the consignee.

Although no specific instructions were given by the consignee to the railroad to spot the car of cream onto its private siding, it was done "automatically" in accordance with general or regular procedure with respect to carload shipments from the midwest. The consignee paid the switching charge incident to the movement. There was some evidence indicating that delivery from Newport News to the siding was a day later than the normal movement. But there is no evidence tending to show that this day's delay was the cause of the souring of the cream. On cross-examination, one of plaintiff's witnesses said that 65 hours was not an "exhorbitant" period for sweet cream to be in transit, and that most of the cream received comes through properly after two, three or four days in transit. When the car was unloaded, there were 500 pounds of ice remaining in each of the two ice bunkers in the

car. Neither the plaintiff shipper nor the agent of the defendant had any knowledge of any local arrangement at the terminal point for diversion of the shipment via the Belt Line at Norfolk. The shipper made no inquiry of the consignee with respect to any delay incident to delivery of the car at its siding. It was natural for the shipper and agent, who resided in Bowling Green, to assume that a car waybilled from Bowling Green to Norfolk would arrive at Norfolk at the time indicated on the passenger schedule and no thought was given to the possibility that it would be diverted in delivery to the sidetrack of the consignee rather than to the freight or passenger station at Norfolk.

Since the plaintiff established a prima facie case, the questions of the delay in the transportation and whether such delay was the proximate cause of the damage were for the jury. However, the jury found that the negligence causing the loss was the failure to supply necessary information regarding total time required to make final delivery. In his charge, the trial judge refrained from commenting upon the information given the shipper by the station agent, but, in the absence of a request to charge upon that subject, no prejudicial error intervened, particularly on a review where no assignments of error have been filed.

An interstate carrier can neither guarantee nor promise (as alleged in the petition) the time of delivery of a shipment. *Chicago & Alton Rd. Co.* v. *Kirby*, 225 U. S., 155, 56 L. Ed., 1033, 32 S. Ct., 648, 650; *Atcheson Topeka & Santa Fe Ry. Co.* v. *Robinson*, 233 U. S., 173, 58 L. Ed., 901, 34 S. Ct., 556; *Davis* v. *Cornwell*, 264 U. S., 560, 68 L. Ed., 848, 44 S. Ct., 510; *Davis* v. *Henderson*, 266 U. S., 92, 69 L. Ed., 182, 45 S. Ct., 24; *Steindl* v. *New York Central Rd. Co.*, 296 Ill. App., 70, 15 N. E. (2d), 899.

Under the tariff applying to the shipment, the car-

rier was obligated to furnish without negligence reasonably expeditious transportation and delivery, and in the absence of negligence was not liable for any loss or damage resulting from souring or spoiling. The defendant, therefore, was not liable upon any promise to make delivery in a shorter period than reasonably expeditious transportation and delivery would require.

Since no duty was imposed upon the defendant to inform the plaintiff regarding the exact time of arrival of the car on the siding of the consignee, the finding of the jury in answer to the interrogatory was a finding upon an extraneous and immaterial issue and did not support the general verdict. The special finding imports that the jury found the defendant was not guilty of any other negligence. *Masters* v. *New York Central Rd. Co.*, 147 Ohio St., 293, 70 N. E. (2d), 898. We therefore conclude that the verdict is manifestly against the weight of the evidence.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

CONN and CARPENTER, JJ., concur.