TREES ET AL., APPELLEES, *v.* THE PENNSYLVANIA RD. CO., APPELLANT.

(No. 239—Decided April 24, 1951.)

Mr. *William L. Coleman,* for appellees.
Messrs. *Hoopes & Hoopes,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Union County, Ohio, in an action wherein Wyllie Trees and C. M. Trees, appellees, were plaintiffs, and the appellant, The Pennsylvania Railroad Company, was defendant.

The action is one for damages for injuries to livestock alleged to have been sustained through the negligence of the defendant in delaying the delivery of the same to point of destination, which was Woodstock, Ohio.

The cause was tried to a jury which returned a verdict in favor of the plaintiffs, upon which the judgment appealed from was rendered.

The defendant-appellant assigns error in a number of particulars, including claimed error of the court in overruling motion of defendant for a directed verdict in its favor at the close of all the evidence.

The liability of the defendant-appellant, The Pennsylvania Railroad Company, is necessarily dependent upon whether it had contracted with plaintiffs for the carriage of the livestock in question.

While it is not alleged in the petition, the evidence introduced in the cause shows conclusively that the plaintiff C. M. Trees, through his agent, one Ed. Schmidt, entered into such a contract, designated as Uniform Livestock Contract, with the Great Northern Railroad Company at Hutchinson, Minnesota, under date of May 13, 1947, for the carriage of the carload of livestock in question from Hutchinson, Minnesota, to Woodstock, Ohio, consigned to the plaintiff C. M. Trees, routed over The Great Northern Railway to Minneapolis, The C. B. & Q. Railroad to Chicago, Illinois, and The Pennsylvania Railroad Company to Woodstock, Ohio.

Among other things it was provided in said contract:

"It is mutually agreed, as to each carrier of all or any of said livestock over all or any portion of said route to destination, and as to each party at any time interested in all or any of said livestock, that every service to be performed and every liability incurred in connection with said shipment shall be subject to all the conditions, whether printed or written, herein contained, including the conditions on back hereof, and which are agreed to by the shipper and accepted for himself and his assigns."

"Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the livestock herein described shall be liable for any loss thereof or damage thereto or delay

caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness or natural propensity of the animal, or the act or default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor or threatened violence."

"Unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said livestock occasioned by any of the following causes; overloading, crowding one upon another, escaping from cars, pens, or vessels, kicking or goring or otherwise injuring themselves or each other, suffocation, fright, or fire caused by the shipper or the shipper's agent, heat or cold, changes in weather or delay caused by stress of weather or damage to or obstruction of track or other causes beyond the carrier's control."

"No carrier is bound to transport said livestock by any particular train or vessel or in time for any particular market, or otherwise than with reasonable dispatch."

As the shipment was from one state to another, it was subject to and governed by the federal laws relating to interstate commerce.

These laws provide, among other things, for uniform freight rates, and the filing with the Interstate Commerce Commission, by the railroads engaged in interstate commerce, of schedules of freight trains operated by them, and the freight rates charged by them, and the keeping of copies of such schedules and rates for public inspection, and further provide that shipments of freight are to be made subject to such schedules and rates.

The following rules of law are held by the Supreme Court of Ohio, applicable to interstate shipments of the character mentioned.

1. The rights and liabilities of parties to an inter-

state carriage of goods by common carriers under and through bill of lading are governed by federal statutes and decisions and should be determined in state courts according to the pronouncement of federal tribunals. *Toledo & Ohio Central Ry. Co.* v. *S. J. Kibler & Brothers Co.*, 97 Ohio St., 262, 119 N. E., 733.

2. In an action brought by an owner of livestock against a terminal carrier to recover damages sustained during shipment, the owner makes out a prima facie case when he introduces evidence that the livestock was unaccompanied by himself or his caretaker, was received for shipment by the initial carrier in good condition and delivered at the destination by the terminal carrier in an injured or damaged condition. *Wilson* v. *Pennsylvania Rd. Co.*, 135 Ohio St., 560, 21 N. E. (2d), 865. Approved and followed, *Grosjean* v. *Pennsylvania Rd. Co.*, 146 Ohio St., 643, 67 N. E. (2d), 623.

3. At common law a common carrier is an insurer of freight against all losses except those arising from an act of God, a public enemy, the inherent nature of the goods shipped, the conduct of the shipper, or certain other causes in some jurisdictions. Accordingly, in the case of a shipment of livestock a common carrier is not an insurer but is liable only in case of negligence; the exception is due to the inherent nature of the shipment, or as it is sometimes said to the peculiar nature and propensities of the animals. *Wilson* v. *Pennsylvania Rd. Co., supra,* at page 562.

If the livestock shipped is in charge of the owner or his caretaker, the owner must allege and prove negligence of the carrier as an essential element of his right to recover for injury and damage to the shipment; the reason is the owner has full cognizance of the surrounding facts. On the other hand, if the livestock is unaccompanied by the owner or his caretaker, proof of negligence in the first instance is not essential.

That is to say, the rule as to a prima facie case is the same whether the gist of the action is negligence in the carriage of livestock unaccompanied by the owner or his caretaker or the mere breach of duty to carry safely as in case of inanimate freight under ordinary conditions. In either event a prima facie case is made out by proof that the goods or livestock was received by the carrier in good condition and delivered by the carrier at the destination in bad condition. The underlying reason is that the facts as to the injury or damage are peculiarly within the knowledge of the carrier. Of course the parties may fix their rights and obligations by special contract subject to the established principle that the common carrier may not exempt itself from liability for negligence.

The federal rule as to an interstate livestock carrier is the same. *Wilson* v. *Pennsylvania Rd. Co., supra,* at pages 562-563.

4. The Carmack Amendment to the Interstate Commerce Act (June 29, 1906, Section 20 [11], Title 49, U. S. Code, Chapter 3591, 34 Statutes at Large, 584-595) does not change the common-law rule above set forth. *Wilson* v. *Pennsylvania Rd. Co., supra,* at pages 563-564.

5. The liability of the terminal carrier for damages to livestock shipped and transported in interstate commerce over the lines of connecting carriers is not essentially different. *Wilson* v. *Pennsylvania Rd. Co., supra,* page 564.

6. To rebut such prima facie case it is incumbent on the terminal carrier to produce evidence that the injury or damage was not the result of negligence or a breach of contractual duty in connection with the carriage, or that such injury or damage was due to the inherent vice, weakness or natural propensities of the livestock or to some other recognized cause which would exempt the carrier from liability.

7. Such prima facie case is overcome where the evidence introduced in rebuttal counterbalances the evidence by which the prima facie case was made.

8. The burden rests upon the plaintiff to establish his case by a preponderance of all the evidence and that burden does not shift.

9. Where all the evidence on the subject is to the effect that there was no negligence, fault or breach of contractual duty on the part of the carrier in transporting a shipment of livestock, the bare fact that the livestock were afflicted with a disease upon arrival at their destination is insufficient to fix responsibility therefor on the carrier. *Grosjean* v. *Pennsylvania Rd. Co., supra.*

It will be noted that the quoted provisions of the Uniform Livestock Contract, above mentioned, are in conformity with the foregoing rules of law and do not change the liability imposed upon carriers of livestock at common law.

The livestock in the instant case was not accompanied by the owner or his caretaker, so that all the foregoing rules are applicable to the facts of the instant case.

The evidence further conclusively establishes:

The livestock was loaded by the shipper, at Hutchinson, Minnesota, in livestock car GN58678 at 2:30 p. m., on May 3, 1947, and the livestock was inspected after loading and found to be in good condition. The car was taken from Hutchinson on an eastbound Great Northern freight train between 2:30 and 3 p. m., on May 3, 1947.

The car was delivered to The Pennsylvania Railroad Company at Dolton, Illinois, on May 6, 1947, at 10:30 a. m., and at the time of the delivery thereof said livestock was in good condition.

The car was attached to the first Pennsylvania freight train leaving thereafter. This was a through

freight train scheduled to leave Dolton, Illinois, at 6:40 p. m., on May 6, 1947, but which did not leave until 9:30 p. m. It was scheduled as a through freight train from Dolton, Illinois, to Columbus, Ohio, and was not scheduled to stop for the delivery of freight at wayside stations.

The through freight train to which the car was attached proceeded through Woodstock, the destination of the car of livestock, to Columbus, Ohio, without stopping at Woodstock. It was scheduled to arrive in Columbus at 4:20 a. m., May 7th, but did not actually arrive until 9:35 a. m., May 7th.

The first local freight train scheduled to leave Columbus for Woodstock on May 7th was scheduled to leave at 8 o'clock a. m., the train being designated as CL7, and being the one on which said car of livestock was transported back to Woodstock and there unloaded, but the train did not leave Columbus until 12:20 p. m. on said date and did not arrive at Woodstock until 6:30 p. m.

The first station west of Woodstock where the carload of livestock could have been attached to a local freight train, was Bradford, Ohio, but in order to have been attached to a local freight train at Bradford the car would have left Dolton on freight train NW88 to Logansport, and there it would have been reclassified and placed on freight train LD8 for Bradford.

This train would have arrived at Bradford at 6:30 p. m., on May 7th, and would have left Bradford for Woodstock at 8 o'clock a. m., in train CL8 on May 8th and would have arrived in Woodstock at 12:10 p. m., on May 8th. Thus, if the car of livestock had been routed by way of Bradford it would not have arrived in Woodstock until over seventeen hours later than the time it actually arrived.

When the livestock was unloaded at Woodstock, its destination, it was discovered that two of the

cows contained in the shipment had calved and that one of the newborn calves had died, all the livestock had lost weight and were in an unhealthy condition due to their natural propensities, aggravated by the long period of time enroute, and the moving and jarring of the car in which they were confined, necessarily incidental to their transportation.

There is no evidence that the carload of livestock was subjected to any unusual stress, strain or jarring during the period of its transportation by the defendant, or by any of the connecting carriers.

As the carload of livestock was not accompanied by the owner or his caretaker, the evidence that the livestock was delivered to the terminal carrier in good condition, and delivered by it at its destination in an injured or damaged condition, under the rules above mentioned, made a prima facie case for recovery by the plaintiff C. M. Trees.

The question then arises as to whether, under the rules mentioned, such prima facie case is overcome by the evidence showing that the injuries to the livestock were due to its natural propensities.

Under the rules mentioned, it is clear that a common carrier is not liable for injuries to livestock in the course of transportation, caused by the natural propensities of the animals if the delivery by the carrier to the consignee is made in conformity with its contract for transporting the same and such injuries are not caused or contributed to by the negligence of the carrier.

The only respect in which the plaintiffs contend the defendant carrier was negligent, is in the failure of the defendant carrier to cause its through train from Dolton, Illinois, to Columbus, Ohio, to stop at Woodstock on its way to Columbus and deliver the livestock.

The defendant carrier, both under the terms of its above quoted contract of carriage, and under the com-

mon law, was not required to transport said livestock by any particular train or otherwise than with reasonable dispatch, and under the common law and the federal statutes relating to interstate commerce was only required to transport the livestock in accordance with its schedules.

As the freight train from Dolton, Illinois, to Columbus, Ohio, was, as shown by its schedules on file with the Interstate Commerce Commission, and also on file for public inspection, a through freight train, the defendant carrier did not owe any duty to stop the train and make delivery of the livestock on its way through Woodstock to Columbus, and the defendant carrier is therefore not chargeable with negligence in its failure to do so.

It is a general rule of law that an interstate carrier can neither guarantee nor promise the time of arrival or delivery of a shipment unless such action is authorized and provided for in the duly published tariffs applicable to all shippers alike on equal terms. *Kirchner* v. *New York Central System*, 87 Ohio App., 165, 94 N. E. (2d), 283.

There is no evidence that such action was authorized.

As shown by the evidence, the defendant carrier transported the livestock with reasonable dispatch, in accordance with its tariffs and schedules, free from negligence.

As the injuries to the animals were caused by their natural propensities and were not contributed to in any manner by the negligence of the defendant carrier, the defendant carrier was not liable in damages for such injuries.

The court therefore erred in overruling the motion of defendant railroad company for a directed verdict in its favor at the close of all the evidence, and for

this error the judgment of the Common Pleas Court will be reversed, and this court, rendering the judgment the Common Pleas Court should. have rendered, will sustain said motion and render final judgment in favor of the defendant railroad company and against the plaintiffs, àt the costs of plaintiffs, including the costs of this appeal.

*Judgment reversed.*

MIDDLETON, P. J., and JACKSON, J., concur.