RESOLUTE INSURANCE COMPANY, a Corporation, Wilbur Haynes and Theta C. Haynes, Plaintiffs-Respondents,

v.

MORGAN DRIVE–AWAY, INC., a Corporation, Defendant-Appellant.

No. 32192.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied May 23, 1966.

Application to Transfer Denied July 11, 1966.

Orville C. Winchell, Lebanon, for defendant-appellant.

John L. Woodward, Paul L. Bell, Steelville, for plaintiffs-respondents.

TOWNSEND, Commissioner.

Action to recover damages for loss of a house trailer and contents destroyed by fire while in possession of defendant carrier. From an adverse judgment defendant appeals.

The plaintiffs Haynes delivered their house trailer into the possession of the agent of defendant Morgan Drive-Away, Inc., at Tucson, Arizona, under an oral arrangement for the towing of the trailer to Cherryville, Missouri. The arrangement

was arrived at after the agent had consulted his rate book and had informed plaintiffs of the charge for such towage. There was no documentation of the relationship between the parties; no bill of lading or receipt was issued to the Haynes by Morgan. On June 8, 1961, while being towed, the trailer burned at Groom, Texas; the remains were towed to Amarillo, Texas, where the best bid for same was $225. Informed of the casualty the Haynes journeyed to Groom, Texas, where they viewed the trailer and its contents, and at Amarillo they removed those items which they regarded as salvageable and returned to Missouri with them. At Amarillo they compiled a list of the items of personalty which had been in the trailer and made an estimate of the loss thereon.

The trailer had been insured with the plaintiff Resolute Insurance Company which in the end paid the Haynes $3700 by draft made payable to the Haynes and to a mortgagee in Denver. The insurance company maintains the present action as subrogee. The Haynes sue as owners of the uninsured personal property lost or damaged in the trailer. Through a series of procedural misadventures and change of venue the case came to be tried to the court in the Circuit Court of Franklin County, where judgment was entered in favor of Resolute Insurance Company for $3475 and in favor of the Haynes for $3780.

The defendant is one of the participating carriers which have filed through Mobile Housing Carriers Conference, Inc., as agent, an approved tariff with the Interstate Commerce Commission, designated as Freight Tariff No. 1–E, effective March 25, 1960, and a supplement thereto, effective March 13, 1961. Among other defences, the defendant has relied upon the terms of such tariff.

Since the Congress has long since chosen to legislate comprehensively in the field of interstate transportation, the question of defendant's liability rests primarily upon federal law.

The Interstate Commerce Act as amended requires a carrier receiving goods for interstate transportation to issue a receipt or bill of lading therefor. 49 U.S.C.A. § 20, par. (11). The tariff filed by the carriers conference and approved by the Interstate Commerce Commission contains not only the rates which may be charged by a carrier but also a variety of terms relating to routes, conditions of carriage and delivery, repairs, carrier's liability, and other incidents of the relationship of shipper and the carrier. It includes also a Uniform Straight Bill of Lading form, which it is readily understood has been approved by the Commission as part of the tariff and so may be used by the carrier.

■ The dominance of the approved tariff in the relationship of shipper and carrier is well illustrated by the holding of a federal court more than forty years ago: "It is well settled that * * * the rules and regulations, as well as the rates, filed by the carrier with the Interstate Commerce Commission, enter into and form part of all contracts of shipment, whether the shipper has notice of them or not." Hartness v. Iberia & V. R. Co., D.C., 297 F. 622. And so where the carrier issues the uniform bill of lading as found in the tariff its terms are applicable and form part of the contract of carriage. "Pursuant to Congressional authority, the Interstate Commerce Commission has prescribed uniform forms of bills of lading * * *. The construction of the clauses of a bill of lading, adopted by the Commission and prescribed by Congress for interstate rail shipments, presents a federal question * * *. Since the clauses of the uniform bill of lading govern the rights of the parties to an interstate shipment and are prescribed by Congress and the Commission in the exercise of the commerce power, they have the force of federal law * * *." Illinois Steel Co. v. B. & O. R.

Co., 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259.[1]

Pertinent to the present case is the question of whether the terms of the authorized uniform bill of lading govern the rights and duties of the parties where no bill of lading has been issued. Here the bill of lading form found in the tariff specifies that "as a condition precedent to recovery, claims must be filed with the receiving or delivering carrier * * * within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed * *." Defendant maintains that plaintiffs filed no claim with defendant within the prescribed nine months period. Plaintiffs contend that the stated condition precedent has no significance in the present case since no bill of lading was issued by defendant.

■ It has been widely held that where no bill of lading has been issued the uniform bill prescribed by the Commission will be implied. Thomas Foods, Inc. v. Penn. R. Co., 112 Ohio App. 76, 168 N.E.2d 612; Hubbard Grocery Co. v. Payne, 94 W.Va. 273, 118 S.E. 152. "Where no bill of lading is actually issued, all of the provisions of the uniform bill of lading, prescribed by the Commission and filed as a tariff, will apply to the shipper and carrier in full force, just as though a bill of lading were actually issued." Atlantic Coast Line R. Co. v. Clinchfield Fuel Co., D.C., 94 F.Supp. 992. Where the carrier brought an action against the shipper for freight charges not paid by the deliveree, it was held that the terms of the bill of lading form imposing a duty upon the shipper to pay such freight charges unless the shipper noted on the bill of lading that the goods were not to be delivered unless freight was paid by consignee were held governing, although no bill of lading was

issued and although the shipper otherwise directed "Freight Collect." Western Maryland Ry. Co. v. Cross, 96 W.Va. 666, 123 S.E. 572. In Berg v. Schreiber, 405 Ill. 528, 92 N.E.2d 88, a truck transportation case, the filed tariff included the uniform bill of lading carrying the identical condition precedent that is present in the instant case. The Supreme Court of Illinois treated that condition precedent (filing claim within ninety days) as governing the relationship of the parties although no bill of lading had been issued and denied shipper's recovery because of failure to satisfy the condition precedent.

■ We regard the tariff form of the bill of lading as a part of the contract in the present case, but we find the condition precedent specified in the bill of lading form to have been satisfied. Plaintiffs Haynes did file claim with defendant within nine months after the trailer should have been delivered. The trial court did so find and we think properly. The evidence relating to making claim upon the defendant was as follows: Plaintiff introduced a carbon copy of a letter in this form:

"August 4, 1961

Mr. Phil Leamen
% Morgan Drive-away
Elkhart, Indiana

Dear Mr. Leamen,

In Nov 1960 Wilbur R. Hynes and Thetha C. Hynes purchased a housetrailer thru Marks Trailer Sales, Tucson, Arizona.

This trailer burned in Groom, Texas on June 8, 1961. Mr. and Mrs. Hynes had employed Morgan Drive-away to move the house-trailer from Tucson, Texas to Cherryville, Missouri. This was a total loss.

---

1. One qualification by the Supreme Court itself upon the generality of the last statement (but not relevant here) is found where the shipper is given no opportunity to make a choice between variant freight rates in connection with the limitations on the amount of liability, noted hereinafter. N. Y., N. H., & H. R. Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500. And see Vandenbergh v. Allied Van Lines, Ltd., 137 Mont. 327, 351 P.2d 537.

I understand you are selfinsured. Personal property loss $4400. —and the trailer loss would be around $4000.

Please let me hear from you soon, I want to get it settled.

Very truly yours,
Earl E. Roberts

EER/Ga"

This carbon copy was not signed, but the typed name appearing at the end thereof is that of an attorney who represented the Haynes shortly after the loss occurred. There is no evidence indicating when or where this carbon copy was found. The former secretary of Mr. Earl E. Roberts (who was deceased at the time of the trial) testified that on the purported date of such carbon copy she was on vacation; that she had never seen the original of such letter; that the original was not in Mr. Roberts' office when she returned from her vacation; and that she had no knowledge of what happened to the original letter. She testified that the secretary who worked for Mr. Roberts in her absence was named Heidi Garms and that her tenure in that job was about one week.

In the pre-trial period plaintiffs filed their Request for Admissions and among other things asked for the following admissions:

"1. That Phil Leaman was either an agent, officer, employee or representative of the defendant Morgan Drive-Away, Inc., at the time he received a letter written by Earl E. Roberts, Attorney at Law, Steelville, Missouri, which letter was on the stationery of Earl E. Roberts, Attorney at Law, and bore the letterhead in that fashion and was addressed to Mr. Phil Leaman, % Morgan Drive-Away, Elkhart, Indiana, a copy of said letter is attached to this request.

2. That said letter was delivered to Mr. Phil Leaman by the U. S. Postoffice Department and it was in his possession prior to March 8, 1962."

To these Requests for Admissions the following answers were made:

"1(a) There is no one employed by the company by the name of Phil Leaman, either as agent, officer, employee or representative of defendant Morgan Drive away.

(b) A letter was received by Morgan Drive away which corresponds to the photocopy attached to the Request for Admissions.

2. The undersigned does not know of his own knowledge that said letter was delivered by the United States Postoffice Department on or before March 8, 1962."

These answers were sworn to by Mr. Bill R. Privitt, secretary of the defendant Morgan Drive-Away, Inc. The copy of a letter attached to the Request for Admissions was clearly identified as being the same in content as the carbon copy introduced as an exhibit. When the carbon copy was offered in evidence, defence counsel objected and among other matters stated: "It is already admitted by admissions anyhow. The same item he has marked as an exhibit." The trial judge: "Is that the same letter?" Plaintiffs' counsel: "It is the same letter, Your Honor." The Court: "Yes, I think the admission does cover that."

The only witness called by defendant was Mr. Phil Lehman, who testified that he had been employed by defendant for about six years, that in August 1961, "I was like a general office manager and I also had charge of the claims department" and that in the six years he had been with defendant there was no one employed by defendant by the name of Phil Leaman. Thereafter he identified the Mobile Housing Carriers Conference tariff and the supplement, entered as exhibits, and testified that as manager of defendant and as claims manager he had never received written demand either from the Haynes or from the Resolute Insurance Company with respect to the trailer loss. Such was the full extent of his testimony.

The March 8, 1962 date specified in the Request for Admissions was adopted by plaintiffs presumably because that day marked the expiration of a nine months period after the loss of the trailer. While there is no direct evidence as to the precise time of the receipt of Mr. Roberts' letter by defendant, we think the clearly established facts justify the inference that it was received before that date. The fact that defendant has in possession a letter dated August 4, 1961, with content the same as that of the exhibit, shows that that communication was delivered to defendant by some means of transmission; given the various modern modes of communication the only reasonable conclusion that can be reached is that Mr. Roberts mailed the letter near the date of same and that in the ordinary course of events it reached the defendant in Elkhart, Indiana, shortly thereafter. As between all parties hereto the defendant is in the best position to determine when—or between what dates—the defendant received Mr. Roberts' letter. It is worth noting that defendant failed to obey the Court's order directing defendant to specifically admit, deny or state under oath, that the means of securing information or knowledge necessary to completely answer plaintiffs' Request for Admissions, paragraphs 2, 3, 4 and 5, were not reasonably within its power. We need to contrast no further the testimony of Mr. Lehman that he had never received a demand from plaintiffs with the admission of the Company that a letter of demand addressed to Phil Leaman, % Morgan Drive-Away, is in the possession of the Company. In this connection we may note also that when Mrs. Haynes was asked by defence counsel: "* * * did you file any claim with Morgan Drive-Away yourself?" She answered: "No, when they wouldn't—I couldn't get any response from them, why, we put it in the hands of the lawyer then. I told Mr. *Lehman* we would do that then, when I finally got in contact with him by phone."

No question was raised as to the fact of Mr. Roberts' representation of the Haynes. The letter written by him on their behalf and on his letterhead as an attorney was quite sufficient to apprise defendant that they were making a claim against defendant based on the contract of carriage. No particular form of demand is necessary. Georgia, F. & A. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948. "The written notice which is to be considered in a 'practical way' is sufficient if a carrier cannot draw any inference from it other than that a claim for damages was contemplated, even if the writing does not contain a formal demand for damages." Delaware, L. & W. R. Co. v. United States, D.C., 123 F.Supp. 579. The letter does not bear the defect of failing to state an amount of claim, a defect which caused the court in Berg v. Schreiber, supra, to hold that the condition precedent had not been satisfied. No significance can be attached to the testimony of each of the Haynes that they made no written demand upon defendant; they engaged Mr. Roberts to represent them and consequently his communication to Morgan Drive-Away is their communication.

The suppplement to Freight Tariff No. 1–E provides inter alia that "carrier shall not be liable for damage to personal effects of any kind unless same shall have been packed and secured by the carrier * *." As there is no evidence that the carrier packed any of the personal effects of the Haynes it becomes important to consider the applicability of this exclusionary term since that part of the judgment in favor of the Haynes is for the loss of and damage to personalty other than the trailer.

By the terms of Title 49, § 20, par. (11), U.S.C.A., any initial or delivering carrier is made liable for loss, damage or injury to property received for transport *caused by it* or by any connecting carrier. With relation thereto, any limitation of liability or of the amount of recovery, found

in any receipt, bill of lading, contract, rule, regulation, or in any tariff filed with the Commission, is declared to be unlawful and void. Faced with such a statutory fiat, no carrier can contract itself out of liability for its own or a connecting carrier's negligence; nor can it achieve such an immunity or limitation of its liability by embodying provision therefor in any tariff. One qualification upon the statutory prohibition is found in this section 20, par. (11), not for the purpose of excluding the liability imposed by the paragraph but for the purpose of limiting the amount of a shipper's recovery. If the Commission authorizes a carrier to establish variant rates for the carriage of property (other than live stock) dependent upon the value declared by the shipper or agreed to in writing then the declaration or agreement has the sole effect of limiting a shipper's recovery to the amount so declared or agreed. Such provision has no effect upon the substantive question of liability. Where different rates for carriage are established dependent upon the value so stated, the shipper has a choice of paying a lower rate and having any possible recovery limited to a contractual stated amount or, by declaring a value greater than such stated amount, of paying a higher rate and having a possible recovery limited only by the higher declared value.

■ A presumption of carrier's negligence arises from proof that goods were delivered to the carrier in good condition and were either delivered by the carrier in damaged condition or were never delivered to the consignee. "[T]he presumption arose that they had been lost by reason of the negligence of the carrier or its agents." Galveston, H. & S. A. Ry. Co. v. Wallace, 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516. Under such circumstances negligence of the carrier is presumed as a matter of law and need not be submitted as an issue of fact. T. & N. O. R. Co. v. Dingfelder, Tex. Civ.App., 114 S.W.2d 666 (affirmed 134 Tex. 156, 133 S.W.2d 967); Panhandle & S. F. Ry. Co. v. Andrews, Tex.Civ.App., 278 S.W. 478; T. & P. Ry. Co. v. Empacadora de Ciudad Juarez, Tex.Civ.App., 309 S.W.2d 926; Seaboard A. L. R. Co. v. Henry Chanin Corp., 84 Ga.App. 442, 66 S.E.2d 113; Ostroff v. Hustis, 80 N.H. 141, 114 A. 27; Kirchner v. N. Y. Central System, 87 Ohio App. 165, 94 N.E.2d 283; Hamilton Foods, Inc. v. A. T. & S. F. Ry. Co., D.C., 83 F.Supp. 478 (affirmed 9 Cir., 173 F.2d 573); Smith v. Ry. Express Agency, D.C., 110 F.Supp. 911, affirmed 6 Cir., 212 F.2d 47.[2] The presumption is rebuttable; it casts upon the carrier the burden of going forward with evidence to show that it was free of negligence, Smith v. Ry. Express Agency, supra, or as sometimes stated it shifts to the carrier the burden of showing by preponderance of the evidence that the damaged condition was not the result of negligence. Ry. Express Agency v. Shull, 224 Ark. 476, 275 S.W.2d 882.

■ In the present case defendant offered no evidence as to the circumstances surrounding the loss of the trailer and its contents; no attempt was made to explain the cause of the fire. Its only witness testified as previously outlined. Therefore the unrebutted, unqualified presumption of the carrier's negligence prevails. From this it follows that the tariff provision attempting to eliminate any responsibility for damage to personal effects unless "packed and secured by the carrier" cannot stand, for by the very words of the above recited Section 20(11) any such limitation of liability is made unlawful and void. The defendant took upon itself the

**2.** It has even been held that where plaintiff's pleadings make specifications of negligent conduct and the evidence does not sustain such specifications, plaintiff may still fall back on the presumption. T. & N. O. R. Co. v. Willis, Tex.Civ.App., 94 S.W.2d 235 (and see T. & P. Ry. Co. v. Empacadora, etc., supra). Contra, Wentworth Fruit Growers' Assn. v. Am. Ry. Express Company, 222 Mo.App. 1189, 1 S.W.2d 1028; Davis v. Rivers, 103 Okl. 198, 229 P. 571. Cf. State ex rel. A. T. & S. F. Ry. Co. v. Trimble, 302 Mo. 8, 257 S.W. 104.

transport not only of the trailer but also of its contents; as a condition of entering into the arrangement with the Haynes it even required the removal of certain items of personal property in order to reduce the weight. It agreed with the Haynes to seal certain closets and drawers containing personal effects. It assumed the position of a carrier, not only of the trailer, but of the contents thereof. Accordingly the tariff limitation in question is a nullity.

■ In its motion for new trial the appellant asserted that the Court lacked jurisdiction. Up to that point, the record is completely devoid of any such suggestion by appellant. Appellant's contention is based upon the following sequence of events: The case came on to be tried in the Circuit Court of Crawford County before a jury. Mr. and Mrs. Haynes testified. Thereupon there was a conference between the Court and counsel in chambers, after which the judge returned to the bench and addressed the jury: "Gentlemen of the jury, in just a few moments the attorney for plaintiffs is coming back in here and he, in effect, will ask us to take a non suit in this case at this time, which, in effect, will be the end as far as this jury is concerned * * *. At some future time, he, no doubt, will re-file his case * * * certain evidence that it is necessary for the plaintiffs to introduce at this trial is not available to them at this time, and for that reason it cannot be offered in evidence; and for that reason alone he is asking, in effect, that the case be continued to some other time, at which time we will present it to some other jury." Thereupon the jury was discharged.

Under the same date, May 28, 1963, the Court entered its order as follows:

"Both sides announced ready for trial. Jury sworn and plaintiffs gave their evidence in part. It appearing that certain evidence plaintiffs needed is in the possession of defendant and not available to plaintiffs at this time. Jury discharged on plaintiffs' request. All costs incident to jury trial are taxed against plaintiffs. Cause passed for setting to a later date to be agreed upon."

From this record appellant argues that the net effect of the whole proceeding on May 28, 1963 was that respondents thereby took a non-suit and accordingly that thereafter there was no pending case in the files of the Court. We do not believe that the inadvertent use of the word "nonsuit" in the Court's address to the jury was intended to have any such effect, particularly in view of the fact that in the same address to the jury the Court referred to the case being continued to some other time. In any event, appellant's argument ignores the fact that the Court speaks through its record and the order of the Court states that the case is passed for setting at a later date. The authorities cited by the appellant are not apposite. Appellant's argument in general runs in terms of a judgment of discontinuance or a judgment of dismissal. The very words of the Court's order here clearly indicate that that order was neither. There was nothing to show that the Court intended to dismiss the case or to discontinue it entirely. The whole proceeding here was in the nature of a mistrial and not of a non-suit. One month after the cause was "passed for setting to a later date" plaintiffs filed their Request for Admissions and in response thereto appellant (defendant) filed its motion to dismiss, strike and disregard the Request for Admissions. Nine months after the cause was passed for setting to a later date defendant filed its application for a change of judge, which was sustained, and ten days after that the Honorable Joseph T. Tate was temporarily transferred from his circuit to the Forty-Second Judicial Circuit to hear the case. In the meantime the plaintiffs had filed their second amended petition, to which defendant-appellant filed its answer in due course. Counsel for the parties entered into a stipulation that any objections to further motions or pleadings be submitted to Judge Tate on memoranda without oral argument in order to avoid

further pre-trial conferences. Plaintiffs filed further Requests for Admissions, to which defendant-appellant answered. The case then came on for trial before Judge Tate in the Circuit Court of Franklin County, with preliminary stipulations by the parties that the venue be changed from Crawford County to Franklin County and that the original files be transferred from Crawford County Circuit Court to Franklin County Circuit Court. As previously stated, the record shows no objection by the appellant to the continuance of the case. We are unable to discern any prejudice to the appellant. In any event defendant made no timely objection below, participated in all proceedings subsequent to May 28, 1963 and went to trial voluntarily. Thereby it waived the point now raised.

■ Appellant's final point is that the method utilized by plaintiffs for proof of damages was inaccurate and contrary to law. Appellant would characterize plaintiffs' testimony as guesswork.

It is apparent that Mrs. Haynes did not fully understand the questions put to her by counsel relating to values before and after the fire and hence her answers were confusing. We find no such defect in the testimony of Mr. Haynes. At Amarillo plaintiffs prepared a list of the items that were in the trailer. Using that list to refresh recollection, Mr. Haynes testified as to the value of items completely destroyed; likewise he gave testimony as to items which were salvageable, stating values before and values after. In many instances the items in both categories were new and only recently purchased. No rebuttal evidence was tendered. The Court carefully followed the testimony item by item and laboriously compiled and considered the losses in values so stated by Mr. Haynes and found the damages of plaintiffs Haynes to be $3780.

The finding of values is not always a matter susceptible of precise mathematical determination. Particularly where used personalty is the subject matter, application of the rule of the market place cannot be had with great certainty. See Walton v. A.B.C. Fireproof Whse. Co., 233 Mo.App. 693, 124 S.W.2d 584, 591. In general, "[t]estimony as to the value of property is opinion evidence and is more or less advisory." Lee v. Allen, Mo.App., 120 S.W. 2d 172, 174.

■ No doubt can be had as to the competency of Mr. Haynes' testimony. Without further qualification, the owner of property may testify to its reasonable value, whether the subject-matter be automobiles, State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68; Finn v. Indemnity Co., Mo.App., 297 S.W. 175, household goods, Baird v. Ellsworth Realty Co., Mo.App., 265 S.W.2d 770; Taylor v. St. Louis & H. R. Co., Mo.App., 256 S.W. 499, or heirlooms and keepsakes, State ex rel. Terry v. Ace Storage and Moving Co., Mo.App., 135 S.W.2d 363, and the jury "determines the weight and value of such testimony." State ex rel. Spears v. McCullen, supra. Here the trial judge sat as the trier of fact and the evaluation of the testimony was his function. We find no error in this regard.

The judgment should be affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.