ANNE SAYLES, Plaintiff, *v.* INTERSTATE BUSSES CORPORATION, Defendant.

City Court of Albany, July 11, 1946.

*Franklin P. Gavin* and *Reuben H. Kohn* for plaintiff.

*James H. Mulcare* for defendant.

HERZOG, J. Plaintiff boarded a bus of the defendant at Albany, New York, for passage to Providence, Rhode Island. She arrived at the bus terminal at four o'clock on October 26, 1945, purchased a ticket, and when she found that the bus did not leave for an hour, she checked her handbag. Shortly before five o'clock, she redeemed her bag, surrendered the check, and took the bag to the sidewalk, where the bus was parked.

The bus driver, who was standing at the door of the bus, looked at her ticket and put his hand on the small bag she was carrying and said, " You are going to Providence. I'll take this ", or words to that effect. He took the bag, but gave her no check or receipt and plaintiff did not see what was actually done with the bag, nor has she seen the bag since that time. She had not offered the bag to the driver and apparently intended to keep it with her on the bus. When the bus arrived at Providence, she asked the driver for the bag, but it was missing and it has not been produced as yet. Plaintiff sues in this action for the full value of her bag and its contents, alleging a value of $300. The defense was that the liability of defendant, under its rates duly filed with the Interstate Commerce Commission, was limited to $25. Defendant's attorney tendered the sum of $25 in open court, but plaintiff refused to accept it. No

evidence was introduced by defendant to account for the loss. The case was tried by the court without a jury. The question presented is whether under the above facts the defendant's liability is for only $25 or for the full value of the lost articles.

By the 1935 addition to the Interstate Commerce Act, Part II, Congress assumed control of " the transportation of passengers or property by motor carriers engaged in interstate * * * commerce ". (Part II, § 202, subd. [a]; U. S. Code, tit. 49, § 302, subd. [a].) There can be no question but that this case involves interstate commerce. In such cases, Federal legislation and rules must govern.

"That the effect of the Carmack Amendment to the Hepburn Act * * * was to give to the Federal jurisdiction control over interstate commerce and to make supreme the Federal legislation regulating liability for property transported by common carriers in interstate commerce has been so recently and repeatedly decided in this court as to require now little more than a reference to some of the cases. [Citing cases.] " (*Atchison Ry. Co.* v. *Robinson,* 233 U. S. 173, 180. See, also, *Boston & Maine Rd.* v. *Hooker,* 233 U. S. 97.)

By section 219 of Part II of the Interstate Commerce Act (U. S. Code, tit. 49, § 319) the Congress has made the Carmack Amendment (Interstate Commerce Act, Part I, § 20, subds. [11], [12]; U. S. Code, tit. 49, § 20, subds. [11], [12]) applicable to common carriers by motor vehicles. The Carmack Amendment provides for the limitation of liability, under certain circumstances, to " property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * *."

This section has been applied to sustain limitations of liability on the part of common carriers in a large number of cases which need no citation here. It applies to passengers' baggage. (*Boston & Maine Rd.* v. *Hooker,* 233 U. S. 97, *supra; Galveston Ry. Co.* v. *Woodbury,* 254 U. S. 357; *New York Central R. R.* v. *Beaham,* 242 U. S. 148.) The rule is well stated in Corpus Juris Secundum (Vol. 13, Carriers, § 877, p. 1706): " Under the Interstate Commerce Act as amended carriers must include

in the schedule of rates filed regulations affecting passenger's baggage and the limitations of liability; and where a regulation limiting liability is so filed it is binding on the carrier and on the passenger, even though the passenger has no knowledge thereof; and the rule applies, in respect of a limitation based on the value of the baggage even though the carrier does not inquire as to value."

This rule is based on the principle of estoppel. (*Kansas Southern Ry.* v. *Carl,* 227 U. S. 639; *Hart* v. *Pennsylvania Railroad Co.,* 112 U. S. 331.) The same rule of limitation has been applied to baggage of passengers on motor carriers. (*Patton* v. *Pa. Greyhound Lines,* 75 Ohio App. 100; *Royalty* v. *Greyhound Lines, Inc.,* 75 Ohio App. 322; *Argo* v. *Southeastern Greyhound Lines,* 72 Ga. App. 309; *Tennessee Coach Co.* v. *Carter,* 182 S. W. 2d 121 [Tenn.].) Such limitations must be included in regulations and rates filed with the commission and approved by it, and a choice of rates given, dependent upon valuation. (*Franklin* v. *Southern Pac. Co.,* 203 Cal. 680, certiorari denied *sub nom. Southern Pacific Co.* v. *Franklin,* 278 U. S. 621.)

The question is thus narrowed under the above authorities to the determination of whether or not the defendant has, by its duly filed rates, limited its liability under the circumstances of this case. The general tariff of the defendant, which was introduced in evidence, provides that the rates and charges governing the transportation of baggage will be as shown in National Bus Traffic Association, Baggage Tariff No. 500 F (LC Markel's MP — ICC No. 121). The court can take judicial notice of this tariff. (Civ. Prac. Act, § 344-a, subd. A, par. 5.) I have examined tariff No. 500 F in detail. It is a tariff adopted by a large number of carriers, and as of January 1, 1946, was superseded by 500 G. Without setting forth the provisions of the tariff in detail, it is my opinion that the limitations contained therein apply *only to checked baggage.* The same tariff was construed in the case of *Santa Fe Trail Transportation Co.* v. *Newlon* (195 Okla. 542, 545) where the facts were almost identical with the instant case and the court held: " The defendant stands upon the tariff to limit its liability to the sum of $25. We find no fault with the cases cited by the defendant covering checked baggage, but they are not applicable to the facts in this case. Defendant has not cited any cases where the tariff has been held applicable to unchecked baggage." It is apparent that the defendant itself placed the same interpretation on the tariff regulations, because its printed notices posted in the depot read:

" Baggage will be *checked* and transported subject to provisions of tariffs lawfully in effect. Tariffs include the following provisions:

### FREE BAGGAGE ALLOWANCE

For each adult ticket you *may check,* without additional charge, baggage not exceeding

$25.00 in Value       and       150 Pounds in Weight

\* \* \* \* \* \* \*

CARRIER'S LIABILITY IN THE EVENT OF LOSS OR DAMAGE WILL NOT EXCEED $25.00 for one or more pieces of baggage *checked* on an adult ticket unless \* \* \*

\* \* \* \* \* \*

### UNCHECKED BAGGAGE

Carrier will not accept any liability for baggage or other property not checked. Such baggage is the sole responsibility of the passenger." (Italics mine.)

And again in its timetable, it has the following: " BAGGAGE LIABILITY — This company will not be responsible for Baggage unless *properly checked* at the time passenger boards coach. Liability limited to $25.00."

Although the language in the timetable is deceptive and misleading, the language of the poster clearly shows that the defendant interpreted the limitations contained in its filed tariff as applicable only to checked baggage. In the event of doubt as to the meaning of a tariff, all ambiguities should be resolved against the carrier which prepared it. (*Union Wire Rope Corporation* v. *Atchison, T. & S. F. Ry. Co.,* 66 F. 2d 965, 967, certiorari denied *sub nom. Atchison, T. & S. F. Ry. Co.* v. *Union Wire Rope Corp.,* 290 U. S. 686.) I, therefore, hold that the limitations contained in defendant's tariff apply only to checked baggage. (See, also, *Atl. Coast Line R. R. Co.* v. *Barksdale,* 32 Ga. App. 643.)

Did the plaintiff check her baggage as comprehended by the regulations and filed tariff? I think not. The word " checked " when applied to baggage has a common meaning from its ordinary usage. The very word itself implies that a receipt is given for the articles. I hold, for the purpose of this case, that " to check " baggage, a passenger on a common carrier must not only turn it over to the carrier but the carrier must also give him a receipt or " check " for the baggage. This holding is strengthened by the Carmack Amendment itself which provides that the carrier receiving property for transportation " shall issue a receipt or bill of lading therefor ".

Defendant argues in its brief that the giving of a baggage check is unnecessary, and nothing more than a courtesy extended by the defendant to the plaintiff, as both parties are bound by the tariff filed. There can be no dispute with the proposition that both parties are bound by the filed tariff, but the real dispute is whether or not the tariff applies to checked baggage only and then whether or not plaintiff checked her baggage. Defendant cites the *Patton* case (75 Ohio App. 100, *supra*) as being almost on all fours with this case. It is interesting to note that in that case, the court held (p. 103): "We therefore conclude that, under certain circumstances, there may be a limitation of baggage liability under the interstate commerce act for baggage carried on motor busses as well as on railroad trains or boats.

"And in connection with the facts in this case we determine that the ' certain circumstances ' heretofore mentioned have been fully met by  *  *  *  (2) the notice to the passenger of such baggage limitation, *printed on his baggage receipt* as well as on his passenger ticket  *  *  *." (Italics mine.) In all cases cited by defendant, receipts or checks were given for the baggage.

The United States Supreme Court has this to say about checks for passengers' baggage, in the leading case of *Boston & Maine Rd.* v. *Hooker* (233 U. S. 97, 121–122, *supra*): "We do not think the requirement of the Carmack Amendment, that a railway company receiving property for transportation in interstate commerce shall issue a receipt or bill of lading therefor, required other receipts than baggage checks, which it is shown were issued when the baggage was received in this case. When the Amendment was passed Congress well knew that baggage was not carried upon bills of lading and *that carriers had been accustomed to issue checks upon receipt of baggage.* We do not think it was intended to require a departure from this practice when the matter was placed under regulation by schedules filed and subject to change for unreasonableness upon application to the Commission. Such checks are receipts, and there is no special requirement in the statute as to their form. It is doubtless in the power of the Interstate Commerce Commission to make requirements as to the checks or receipts to be given for baggage if that subject needs regulation." (Italics mine.)

It should be noted that in this case there was a vigorous dissent, one of the grounds for which was that such a check or receipt was insufficient. (See, also, *Robidoux* v. *Chicago & N.*

*W. R. Co.,* 113 Neb. 682; *Hasbrouck* v. *N. Y. C. & H. R. R.R. Co.,* 202 N. Y. 363, 376.)

It thus appears that the defendant provided in his filed tariff only for a limitation of liability when the baggage is checked by the passenger and that the plaintiff in this case did not " check " her baggage. Under these circumstances, common-law rules of responsibility apply. The estoppel principle upon which the above-cited cases limiting liability were decided is not applicable. The plaintiff, under the tariff filed, declares no value unless her baggage is checked. Also, I fail to see how the possibility of rebates and discrimination, which was a governing feature of those cases can be present here.

The common-law rules are too firmly established to need more than brief mention and, in fact, the same liability is imposed by the Carmack Amendment, which, however, permits limitation under special circumstances. (*Mo., Kans. & Tex. Ry.* v. *Harriman,* 227 U. S. 657, 672.) Although it might be contended that defendant's possession was that of a carrier and, therefore, an insurer, at the least it was a bailee, as the bag was given into its care, custody and control when the plaintiff delivered it to the driver at his request. (*Hasbrouck* v. *N. Y. C. & H. R. R.R. Co., supra; Reisinger* v. *Pullman Company,* 248 App. Div. 171; cf. *Murphy* v. *Eastern Greyhound Lines, Inc.,* 235 App. Div. 109, where the baggage was in the bus in full sight of passenger; also cf. *Posner* v. *New York Central Railroad Co.,* 154 Misc. 591.) As a bailee rather than a carrier, defendant is only liable for its negligence in the loss of the bag. Failure to deliver it when demanded is prima facie evidence of negligence, if there be no explanation or accounting for such nondelivery. Defendant gave no explanation. Therefore, its negligence is presumed and it is liable for the full value of the property lost by plaintiff. (See the well-reasoned case of *Franklin* v. *Southern Pac. Co.,* 203 Cal. 680, *supra.*) Under the statutes and above authorities, the mere statement by defendant in its posters, timetables, etc., claiming no liability for baggage not checked is of no avail when the carrier exercises custody and control and becomes a bailee.

The above discussion makes unnecessary a consideration of the first point of plaintiff's brief to the effect that defendant had not properly pleaded this defense. The pleadings were verbal and much latitude was given.

I have gone to some care to set forth the reasons for my decision in this case for it is apparent from a review of the authorities that too often have lower courts arbitrarily per-

mitted a full recovery. The law could well be clarified on the subject to avoid constant litigation and to acquaint bus passengers with their rights. Too often have the carriers deliberately misled their passengers in posters, timetables, etc. For the views of the Assistant Director of the Interstate Commerce Commission, Herbert Qualls, see address by him before National Bus Traffic Association in Chicago on May 20, 1946. These views, while not of legal value, appear to sustain the position taken by me.

I find that the plaintiff proved reasonable value for lost articles totalling $242.09, and judgment is given her for that amount, together with the costs of this action. Ten-day stay of execution.