J. F. VANDENBERGH AND JEAN VANDENBERGH, PLAINTIFFS AND RESPONDENTS, *v.* ALLIED VAN LINES, INC., A CORPORATION, DEFENDANT AND APPELLANT.

No. 9963.

Submitted March 3, 1960. Decided April 26, 1960.
Rehearing denied May 11, 1960.
351 Pac. (2d) 537.

328

Skedd, Harris & Massman, Helena. L. V. Harris argued orally for appellant.

Ralph J. Anderson and Stanley P. Sorenson, Helena, Ralph J. Anderson argued orally for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict in favor of plaintiffs. The complaint states two causes of action based upon two separate shipments by the defendant. The first cause of action is to recover the value of certain personal property which was lost in transit between Forest Hills, New York, and Helena, Montana. The second cause of action is to recover damages for the impairment of a piano which was being transported from Oakland, California, to Helena. The jury found for plaintiffs on both causes of action and assessed damages at $3,000 on the first cause of action and $1,450 on the second cause of action.

Pursuant to preliminary phone calls, Muller Bros. Inc., which is admitted by the answer to be an agent of Allied Van Lines in Forest Hills, New York, wrote Mrs. Vandenbergh on October 7, 1955, as follows:

"We are pleased to submit the following estimate on the removal of your household goods:

To ship approx. 2500 lbs. 2331 miles

at $16.25 cwt .................................................................$442.50

Federal Trans. Tax 3% ....................................... 12.68

*Comprehensive Transit Protection is at the rate of $5.00 per declared $1,000 valuation."* Emphasis supplied.

On November 1, 1955, Mrs. Vandenbergh answered the above letter stating in part "Please insure my things with your comprehensive transit protection for $5,000.00."

The goods which had formerly been in storage at Muller Bros. Inc. warehouse were shipped from Forest Hills and when they were unloaded in Helena one trunk and one carton were missing. The items contained in the trunk and carton were largely items of unusual value such as sterling silver, original oil paintings and a valuable stamp collection. Mrs. Vandenbergh testified that Muller Bros. Inc. had instructed her on how to pack these items, and assured her that they would be safely kept while in storage.

At all times mentioned herein, defendant's Tariff No. 48c was in force. Rule 12 of this tariff provides as follows: "The carrier will not assume any liability whatsoever for: Documents, currency, money, jewelry, watches, precious stones, or articles of extraordinary value including accounts, bills, deeds, evidence of debt, securities, notes, postage stamps, stamp collections, revenue stamps, letters or packets of letters, articles of peculiarly inherent value, precious metals or articles manufactured therefrom, which are not specifically listed on the bill of lading."

The bill of lading provided that "The carrier shall be liable for the actual loss or damage of or to any article (except documents, specie or article of extraordinary value which are not specifically listed on the bill of lading) while being carried or held in storage-in-transit, arising or resulting from any external cause *other than* an act, omission or order of the shipper,

owner of the goods or a civil or military authority, *provided* that the shipper has declared in writing upon the bill of lading the full actual value of the entire shipment; *otherwise,* the liability of the carrier for loss or damage to any such article shall be released and limited. * * *

"(b) To a proportion of the declared value of the entire shipment, represented by the percentage which the full actual value of the lost or damaged article bears to the full actual value of the entire shipment if the value so declared by the shipper is less than the full actual value of the shipment."

The record clearly shows that the bill of lading was not received by the shippers, Mr. and Mrs. Vandenbergh, until the shipment was received in Helena. Plaintiffs predicate their case upon this fact and allege, in effect, that because of this failure the defendant is liable for the full amount of damage based upon the common-law liability of common carriers.

The defendant's answer sets up an affirmative defense in which it relies upon the following Interstate Commerce Commission regulation: "Liability restricted. Common carriers by motor vehicle of household goods shall not assume any liability in excess of that for which they are legally liable under their lawful bills of lading and published tariffs." Ex Parte No. MC-19, Practices of Motor Common Carriers of Household Goods, 47 M.C.C. 119, Rule 9(a); Code of Federal Regulations, 1949 Ed., Title 49, Transportation, § 176.9.

Defendant's theory is that because of this regulation, plaintiffs were bound by the limitations of the bill of lading and the further limitations of Tariff 48c, Rule 12. This proposition is urged in spite of the fact that no bill of lading was furnished to plaintiffs when the goods were shipped, nor was there any attempt made to furnish a bill at any time prior to the arrival of the goods in Helena.

The main question for our decision is whether the above proposition is a correct statement of the law. Today, it is elementary that questions relating to the limited liability

of interstate common carriers are governed by Federal law. Boston & Main R. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann. Cas.1915D, 593; Sayles v. Interstate Busses Corp., 187 Misc. 286, 66 N.Y.S.2d 377; New York, N. H. & H. R. Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500; Cray v. Pennsylvania Greyhound Lines, Inc., 177 Pa.Super. 275, 110 A.2d 892.

In Caten v. Salt City Movers & Storage Co., 2 Cir., 1945, 149 F.2d 428, 431, the court had before it a case which was in many respects similar to the case now before this court. The facts, briefly stated, were as follows: Plaintiff wrote defendant requesting the approximate cost to ship some household goods. Defendant replied stating an estimate of the weight and the cost figured on that basis. Subsequently the goods were loaded and weighed and plaintiff was advised by phone that the goods weighed 4,650 pounds, was asked what value to put on the goods and was told he was allowed 30¢ per pound under the government bill of lading. Plaintiff advised defendant that he carried $3,000 in insurance on the shipment and he was given a price for an additional $2,000 in insurance which the plaintiff requested that the defendant procure. There was no declaration of value other than this and no bill of lading was issued. A bill of lading was made out based upon the valuation at 30¢ per pound but this bill was with the shipment and was destroyed when the van burned up.

We feel justified in quoting from this decision at length due to the similar fact situation and also due to the extensive analysis of the Federal law on this subject.

"Section 20(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), applies to the defendant by virtue of § 219 of that statute, 49 U.S.C.A. § 319. It provides, insofar as here pertinent, as follows:

" 'Any common carrier, * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * *

shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability hereby imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void: * * * Provided, however, That the provisions hereof respecting liability for full, actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this chapter; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon.'

"After passage of the Carmack Amendment in 1906, 34 Stat. 593, both interstate carriers and shippers were chargeable with knowledge of the content of the schedules filed with the Interstate Commerce Commission and were conclusively presumed to have contracted according to them in respect to rates and liability unless there was proof of rebating or false billing. Atchison, Topeka & Santa Fe R. Co. v. Robinson, 233 U.S. 173, 34 S.Ct. 556, 58 L.Ed. 901; Great Northern R. Co. v. O'Connor, 232 U.S. 508, 34 S.Ct. 380, 58 LEd. 703; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853; L.R.A. 1915E, 665. Where no bill of lading was issued the terms of the uniform bill of lading controlled. New York Central R. Co. v. Lazarus, 2 Cir., 278 F. 900.

'But after the first Cummins Amendment, adopted in 1915, no interstate common carrier could lawfully contract for any limited liability whatever unless the goods shipped were 'hidden from view by wrapping, boxing, or other means, and the carrier [was] not notified as to the character of the goods.' In that event, however, the carrier could require the shipper to specifically state in writing the value of the goods, and the carrier shall not be liable beyond the amount so specifically stated.' 38 Stat. 1196. The privilege of limiting its liability by contract was thus closely circumscribed and valuation in writing by the shipper was made a condition precedent to the carrier's right to make limitation agreements at all. Otherwise the carrier, required by the statute to issue a receipt or bill of lading for the goods, was made liable for the full value of the goods whether or not it had issued a receipt or bill of lading notwithstanding any representation or contract that the goods were of a lesser value.

"The second Cummins Amendment, adopted in 1916, 39 Stat. 441, made further changes which are reflected in the above quotation from § 20(11) of the Act. It was made obligatory upon every initial common carrier accepting property for interstate shipment to issue a receipt or bill of lading therefor

and liability was imposed upon it for the full actual loss or damage to the property sustained during carriage by it or by a connecting carrier under a through bill of lading. So as the law now stands the only limitation of liability permitted is conditioned upon a compliance with the proviso of which the material part has already been quoted. Any attempt to limit liability is prohibited except upon a declaration of value by the shipper in writing or upon a released value agreed to in writing. Although action in writing by the shipper is plainly required, his signature is not necessary but it does furnish good evidence that he did declare or agree in writing. Receipt of the writing by the shipper and his action upon it are adequate proof that he has assented to its terms and has made it the written agreement of the shipper and carrier. American Railway Express Co. v. Lindenburg, 260 U.S. 584, 43 S.C. 206, 67 L.Ed. 414. Compare, Girard Insurance & Trust Co. v. Cooper, 162 U.S. 529, 16 S.Ct. 879, 40 L.Ed. 1062.''

The court in the Caten case concluded that ''To permit a carrier, without any action whatever by the shipper in respect to valuation in writing, to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirement that the shipper must make the declaration or agreement in writing, and nullify that part of the proviso.''

While there is an abundant body of law on this subject, in our opinion. the instant case is controlled by a 1953 decision of the Supreme Court of the United States. New York, N.H. & H. R. Co. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 990, 97 L.E. 1500, was a case in which a passenger traveling interstate lost her baggage while it was entrusted to a ''redcap'' during a temporary stopover. The passenger had received no receipt for the baggage and was not notified of the limited liability of the railroad for baggage entrusted to a ''redcap'' which was filed by the railroad as a tariff. The value of the lost baggage exceeded the amount which the railroad allowed ''red-

caps" to handle. The Supreme Court held that the railroad was liable for the full value of the baggage, stating the proposition as follows:

"But the facts here do not bring the case within the statutory conditions. There was no 'value declared in writing by the shipper or agreed upon in writing'; in fact, not even a baggage check reciting a limitation provision changed hands. Moreover, the actual value of respondent's baggage exceeded $500; the tariff itself deems such highly valued property unacceptable for handling by redcaps. *But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained.* [Citing cases.] *Binding respondent by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice; such an arrangement would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts."* Emphasis added.

A similar statement is found in Mickey Finn Clothes, Inc., v. Yale Transport Corp., 175 Misc. 242, 23 N.Y.S.2d 84, 87, where the court said:

"Even apart from the statutory requirements, a limitation of liability claimed by a carrier cannot be effective unless it is set forth in the bill of lading which constitutes the contract between the shipper and the carrier. The limitation of liability must be brought home to the attention of the shipper [Citing cases.], and a choice given to the shipper to contract with or without the limitation of liability in the movement of goods. [Citing cases.]"

██ The instant case falls within the rules enunciated by the opinions from which we have quoted, principally New York, N. H. & H. R. Co. v. Nothnagle, supra. Here there was no "value declared in writing by the shipper or agreed upon in writing". [346 U.S. 128, 73 S.Ct. 990.] The statement in Mrs.

Vandenbergh's letter regarding the comprehensive transit protection did not amount to a declaration of value. Mrs. Vandenbergh was not given the choice of two rates, did not declare or release the value of the shipment, and did not consent to the terms of the bill of lading which was, in fact, not received by her until the goods arrived in Helena. The absence of these factors prevents the defendant from asserting the limited liability found in its filed tariffs and bill of lading.

Defendant argues that the filed tariffs should apply and govern the transaction in spite of the fact that no bill of lading was delivered. Admittedly there are cases which subscribe to this view. See White v. Southern Ry. Co., 208 S.C. 319, 38 S.E.2d 111, 165 A.L.R. 988. Another theory is that in the absence of a bill of lading the provisions of the uniform bill of lading, filed as a tariff should apply. See Atlantic Coast Line R. Co. v. Clinchfield Fuel Co., D.C.W.D.S.C.1951, 94 F.Supp. 992. These lines of authority when applied to the facts of this case seem patently unsound. The rules are apparently based upon the principle of estoppel. See Sayles v. Interstate Busses Corp., 187 Misc. 286, 66 N.Y.S.2d 377. The difficulty arises when an estoppel is raised against a shipper who is not versed in commercial transactions. The ordinary shipper of household goods, such as the plaintiffs in this case, should not be held to a representation implied from their silence when they were given no real opportunity to make a representation. In the Nothnagle case, counsel for the Interstate Commerce Commission appearing as amicus curiae argued that where no baggage check or receipt is issued implied knowledge of the carrier's regulations providing for limited liability cannot be imputed to the passenger. This view was apparently adopted by the Supreme Court when it said, ''Binding respondent by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice''. [346 U.S. 128, 73 S.Ct. 990.]

Mrs. Vandenbergh made no representation as to the value of

the goods because she was given no ''fair oportunity'' to make one. She was not given the choice which the most recent opinion of the Supreme Court of the United States says, in effect, is a condition precedent to creating the carrier's limited liability.

Similarly plaintiffs are not bound by the failure to list the items of extraordinary value on the bill of lading. There was no opportunity to list them. Failing to grant plaintiffs this opportunity prevents the defendant from setting up the limitation found in its bill of lading and filed tariffs. In this regard our view is strengthened by the undisputed testimony pertaining to Muller Brother's knowledge of the valuable items, and its failure to request that they be listed or give plaintiffs an opportunity to list them after the items had been stored.

Defendant argues that in view of the fact that plaintiffs introduced the bill of lading into evidence they should be bound by its terms even though it formed no part of the first cause of action stated in the complaint. The apparent reason for introducing the bill was to elicit testimony regarding the shortage notations on the bill and the fact that the bill was not received until the goods arrived in Helena. Under these circumstances plaintiffs are not bound by the terms of the bill of lading.

Based upon the foregoing discussion, there was no error in the theory of the case adopted by the trial court in its instructions.

Defendant's last specification of error concerning the first cause of action goes to the admissibility of a 1957 silver price list when the silver was lost in 1955. Testimony was introduced which showed that the price of silver had gone up 17 percent in this two-year period. The introduction of such testimony regarding damages is largely within the discretion of the trial court. See 15 Am.Jur., Damages, § 349. In addition to this authority, the testimony regarding the increase in

the price of silver was undisputed. There was no error in admitting this price list.

■ As to the second cause of action, appellant complains that there was no competent testimony with respect to the monetary extent of the damages to the piano. The appellant relies on an objection on direct examination that certain estimates of cost of repairs were hearsay. It would unduly lengthen this opinion to relate all of the evidentiary matters concerned with the damage to the piano, but we have examined the record and find much competent evidence, some of it produced by the appellant's examination. As to this specification of error, we find no merit.

■ Next, the appellant specifies as error the refusal of the district court to retax certain items of cost. The respondents included in their cost bill two items for copies of depositions taken by appellant. The amount was $40. The depositions of the plaintiffs were taken by defendant and by R.C.M.1947, § 93-1801-10, were required to be filed with the clerk of court. Apparently for their own convenience in trial preparation, the plaintiffs' counsel ordered copies and sought payment as a cost.

In Isman v. Altenbrand, 42 Mont. 188, 111 P. 849, 853, this court held that, ''The cost of taking a party's deposition in his own behalf is, however, not properly taxable against his adversary. In George v. Starrett, 40 N.H. 135, it was held that where a party testifies in his own behalf, in court or by deposition, he shall not be entitled to fees as a witness.''

We hold then that the cost of copies of the depositions was not a proper item of cost.

For the foregoing reasons, the judgment is affirmed as modified by the striking of the two aforementioned cost items totaling $40.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICES ADAIR and ANGSTMAN, and THE HONORABLE ERNEST E. FENTON, District Judge sitting for MR. JUSTICE BOTTOMLY, concur.