The GREYHOUND CORPORATION,
Appellant,

v.

Jacqueline STEVENS, Appellee.

No. 4059.

Court of Civil Appeals of Texas.

Eastland.

July 1, 1966.

Baker, Botts, Shepherd & Coates, Robert J. Malinak, Stephen A. Wakefield, Houston, for appellant.

Hinds & Meyer, John K. Meyer, Houston, for appellee.

GRISSOM, Chief Justice.

In July, 1962, while Jacqueline Stevens was a passenger on The Greyhound Corporation's bus, making an interstate trip from Houston, Texas, to Dover, Delaware, her luggage and its contents were lost by Greyhound. Her baggage was checked free

on one passenger ticket or fare. She sued for the value of the bags and contents. Greyhound, relying on rules of the Interstate Commerce Commission and federal decisions, principally the Hooker case, hereinafter discussed, tendered to Miss Stevens $25.00, as the limit of its liability for loss of her baggage. In a trial to the court, judgment was rendered for Miss Stevens against Greyhound for $500.00, the agreed value of the lost baggage and contents, and Greyhound has appealed.

Appellant's points of error are, in substance, that the court erred in refusing to limit the liability of appellant to $25.00 for the loss of appellee's baggage because (1) appellant had filed a baggage tariff with the Interstate Commerce Commission, thereby giving notice to appellee that its liability was so limited, unless she declared a value in excess of $25.00 and paid the charge therefor; because (2) appellee, as a matter of law, was given reasonable notice that appellant's liability was so limited, unless she declared an excess value and paid the charge therefor, and because (3) appellee was given a reasonable opportunity, as a matter of law, to choose between paying an extra charge for increased protection of her baggage or paying the standard passenger rate, and therefore her protection was limited to $25.00.

Before boarding the bus Miss Stevens checked two suitcases in the bus depot. They were never returned to her. Appellee was given two baggage checks or receipts for her two suitcases at the baggage counter. She immediately put the checks into her purse and did not read the liability limitation printed thereon until she arrived in Delaware on August 1st. On the front of the baggage checks there was a statement that appellant's liability for her baggage was limited to $25.00 and she was referred to the back of the checks. On the back was printed a "Contract Notice to Passengers" by which the party accepting the checks agreed to make no claim in excess of $25.00 for loss of property checked as baggage on one full-fare ticket, unless

the passenger declared in writing, the value of the baggage was in excess of $25.00, in which event a charge for the excess value would be made. They recited that the checks were accepted subject to all conditions of published tariffs. Miss Stevens did not declare a value in excess of $25.00 and did not pay anything above the cost of her passenger ticket for transportation of her baggage.

When Miss Stevens checked her bags there was a framed sign stating "INTERSTATE BAGGAGE LIABILITY $25.00 UNLESS A GREATER VALUE IS DECLARED" hanging at the end of the baggage counter to her left. When she bought her ticket, a sign was hanging over the Western Union Telephone at the right end of the ticket counter which contained a notice that tariffs naming rates, fares, charges, rules and other provisions were on file in that office and could be examined by anyone upon request. Another such sign hung to appellee's right when she checked her suitcases at the baggage counter, and still another such sign, giving notice of the tarriffs, hung behind the ticket office.

A copy of the National Baggage Tariff certified by the Secretary of the Interstate Commerce Commission as being in force at the time Miss Stevens made the trip was introduced. According to the applicable tariff, a free baggage allowance of $25.00 in value was allowed for each adult ticket purchased. The tariff limited the liability of Greyhound for loss of such baggage to the maximum free value allowance of $25.00, unless the passenger declared a value in excess of $25.00 and paid the charge therefor. But it provided that if excess value was declared and the charge therefor paid the passenger could recover the declared value.

At the trial appellant tendered to appellee $25.00, which she refused. The court found that, (1) although appellant had posted the mentioned signs and had given appellee said baggage checks calling at-

tention to the limitation of its liability, Greyhound had not afforded Miss Stevens a reasonable opportunity to discover that its liability for lost baggage was limited by the tariff to $25.00, or (2) a fair opportunity to choose between transportation of her baggage with liability limited to $25.00 or transportation with higher liability. The court concluded, as a matter of law, that such tariff was applicable to the facts of this case but that appellant's liability was not limited to $25.00 because Miss Stevens was not afforded a reasonable opportunity to discover the limitation and declare a higher value.

It is not questioned that appellee's trip was interstate and that the federal law, as set forth in the Interstate Commerce Act, governs the situation to the exclusion of state laws. Adams Express Co. v. Croninger, 226 U.S. 491, 509, 33 S.Ct. 148, 57 L.Ed. 314, 321, 44 L.R.A.,N.S., 257. The case upon which appellant mainly relies is the 1913 decision of the Supreme Court of the United States in Boston & Maine R. R. v. Hooker, 233 U.S. 97, 119, 34 S.Ct. 526, 58 L.Ed. 868, 879. In that case the plaintiff checked her baggage free on a first-class ticket for an interstate journey. She declared no excess value and paid no excess charges. Her baggage was lost. The carrier contended that its liability was limited to $100.00 by virtue of its compliance with federal statutes which required the filing and posting of regulations limiting its liability for loss of baggage as a part of the carrier's tariff schedules. Notices were posted that such regulations were on file and that baggage not exceeding $100.00 in value could be checked free on one passenger ticket. Plaintiff had no actual notice of these regulations and, although she received a baggage check, the opinion does not show there was a notice of such limitation of liability printed on it. The United States Supreme Court there held that under 49 U.S.C.A. § 6, the carrier was required to file and post such regulations as a part of its tariff schedules and that the effect of the carrier's com-

pliance therewith was to give notice of rates based upon value when the baggage was of a greater value than $100.00, and that delivery and acceptance of the baggage without declaration of higher value, charged the carrier with liability only for the amount so limited by regulations filed with the Interstate Commerce Commission.

Common carriers operating interstate have long been required to file tariffs, by which they may limit liability for loss of a passenger's baggage, unless the passenger declares a value in excess of the limited amount and pays the charge therefor. When such a carrier complies with this requirement its liability for lost baggage has been held ever since the decision in the Hooker case to be limited to the amount specified in the tariff, unless the passenger declares a greater value and pays the charge therefor.

In 1935, Congress passed the Motor Vehicle Act, which provides that

"Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the rates, fares, and *charges for transportation, and all services in connection therewith,* of passengers or property in interstate * * * commerce * * *." 49 U.S.C.A. § 317(a). (Emphasis ours.)

Congress thereby expressly required interstate buses to file tariffs, with the resulting limitation of liability unless an excess value was declared by the passenger and the charge therefor paid. See 49 U.S.C.A. § 6 and 49 U.S.C.A. § 317(a). When such tariffs are filed with the Interstate Commerce Commission they are binding upon both the carrier and the passenger whose baggage is transported in interstate commerce.

After the Hooker decision, in 1915 Congress passed the first Cummins Amendment which declared that any attempt to limit liability by a common carrier trans-

porting goods in interstate commerce was unlawful and void, except when a declared value had been stated "in writing." It provided, however, that the carrier could be required to state specifically the value of goods "hidden from view." The Interstate Commerce Commission interpreted this exception relating to goods hidden from view to apply to baggage transported on a passenger train upon the ticket of a passenger. Determining that baggage carried free upon the ticket of a passenger should not be subject to the same rule as ordinary freight, Congress, in 1916, eliminated that provision when it passed the second Cummins Amendment. The purpose of that amendment was to restore the law of full liability as it existed prior to the 1906 Carmack Amendment, so that when thereafter property was lost recovery might be had for its full value. But, from that general rule Congress excepted *baggage carried free on passenger trains upon the ticket of a passenger.* Such provision is still in force and may be found in 49 U.S.C.A. § 20(11). After declaring void any attempt to limit liability for loss of property in interstate commerce said statute makes this exception:

> "*Provided, however,* That the provisions hereof respecting liability for full actual loss * * * notwithstanding any limitation of liability * * * and declaring any such limitation to be unlawful and void, *shall not apply, first, to baggage carried on passenger trains* or boats, or trains or boats carrying passengers * * *." (Emphasis ours.)

In Galveston, H. & S. A. Ry. Co. v. Woodbury, 41 S.Ct. 114, 116, 254 U.S. 355, 360, 65 L.Ed. 301, 303, the United States Supreme Court, in 1920, cited the Hooker case and held that an interstate carrier could limit its liability for a passenger's baggage by filing with the Interstate Commerce Commission and publishing such a tariff. It held that "both carrier and passenger were bound by the provisions of the published tariffs. As these limited the recovery for baggage carried to $100.00, in the absence of a declaration of higher

value and the payment of an excess charge * * *." Said second Cummins Amendment, now found in 49 U.S.C.A. § 20(11), excepts from the general rule of full liability baggage checked free on one full fare. It applied to interstate transportation on passenger trains. That exception has been made applicable to such transportation by bus by the Motor Vehicle Act, 49 U.S.C.A. § 319. The decision in the Hooker case that the carrier's liability for loss of baggage was limited by tariff regulations filed with and approved by the Interstate Commerce Commission when the lost baggage was carried at no extra charge on one passenger's fare and the passenger made no declaration of excess value and paid no charge therefor, has ever since been consistently followed. 13 C.J.S. Carriers § 877, p. 1706. In Payne v. McConnell, Tex.Civ.App., 234 S.W. 942, affirmed (Com.App.), 262 S.W. 72, the carrier, although operating Intrastate, was under federal control. It had with the Interstate Commerce Commission a tariff which limited its liability for loss of baggage to $100.00 absent a declaration of higher value by the passenger. The passenger checked her baggage on her ticket, making no declaration of a higher value and paying no charge therefor. There were signs posted in the depot showing where the tariffs could be seen. Her baggage check recited that liability for her baggage was subject to tariff regulations. The only other knowledge the passenger had of the tariff was the notice given by the filing of such regulation with the Interstate Commerce Commission. The Court of Civil Appeals held that the plaintiff, whose baggage was lost, could recover only the limited amount fixed by the tariff regulation and that the tariff filed with the Interstate Commerce Commission was notice to the passenger of such limitation. The Commission of Appeals in an opinion adopted by the Supreme Court affirmed that judgment. It cited the Hooker case as holding that the notice given by the filed and published regulations required by statute charged the passenger with notice of such limitation and, unless the passenger

declared a greater value the limitation automatically attached. In Payne v. Norman, Tex.Civ.App., 249 S.W. 882, the holding in the Hooker case was recognized and distinguished by the fact that in the Norman case there were two adults and one child who paid fares but checked a single trunk on two full and one half fare. It was held that the carrier's liability was limited by the tariff to two and one-half times the limited amount. In Nast v. San Antonio, U. & G. Ry., (Com.App.), 261 S.W. 1011, it was held that a baggage tariff limiting liability was admissible in evidence and determined the amount of recovery by the passenger for lost baggage. In Wright v. Southern Pacific Co., 181 Mo.App. 137, 167 S.W. 1137, 1138, a Missouri court analyzed and applied the Hooker decision. There the passenger attempted to recover the value of lost baggage without regard for the tariff limitation. The court held that the passenger acquiesced in the limitation fixed by the filed and published rate, saying

"The gist of the (Hooker) decision is that, as the limitation of liability for baggage was filed and posted by the carrier as a part of its schedules for passenger tariff, *the limitation thereby became and was an essential part of its rate,* from which, under the interstate commerce law, it could not deviate, and by which the passenger was bound, regardless of her knowledge or assent to it." (Emphasis ours.)

In Kellett v. Alaga Coach Lines, 34 Ala.App. 152, 37 So.2d 137, the plaintiff sought to recover for a lost trunk an amount greater than the liability limited by the tariff. The passenger checked the trunk on her ticket for an interstate journey by bus. The Alabama court said:

"It is well settled * * * that it is not essential to the applicability of the tariff limitations that the passenger be informed that a choice of rates is available, the presumption being that he knew the provisions of such schedule."

After quoting from the Hooker case and analyzing it the court added that the Hooker case had become the leading authority and had been cited in the vast majority of cases decided subsequently thereto. In Royalty v. Southeastern Greyhound Lines, Inc., 75 Ohio App. 322, 62 N.E.2d 200, the Ohio Supreme Court, in 1945, held that it was the passenger's duty to declare the value of her baggage if she expected to recover an amount in excess of the $25.00 fixed by the tariff as the limit of recovery for loss of her baggage. There, the passenger was given baggage checks for two suitcases which were lost. Greyhound relied upon its tariff rules and the baggage checks to limit her liability. Other authorities which present fact situations not distinguishable from those now under consideration have applied the Hooker decision and refused recovery in excess of the amount limited by tariff regulations filed and authorized by the Interstate Commerce Commission, in the absence of declaration of higher value by the passenger. Such decisions include Argo v. Southeastern Greyhound Lines, 72 Ga.App. 309, 33 S.E. 2d 730; Patton v. Pennsylvania Greyhound Lines, 75 Ohio App. 100, 60 N.E.2d 945 and All American Bus Lines v. Schuster, 199 Okl. 628, 189 P.2d 412.

It has often been held that a reason a carrier may thus limit liability, unless the passenger declares a valuation in excess of the limited amount and pays the charge therefor, is that the rate charged for transportation is based in part upon such limited liability for baggage. The Supreme Court of the United States in the Nothnagle case recognized this fact and distinguished its decision because the cost of Red Cap service was not considered in determining the rate charged for transportation. It is recognized that the compensation paid should bear a reasonable relation to the responsibility assumed. That thought was well expressed in Shirazi v. Greyhound Corp., 145 Mont. 421, 401 P.2d

559, by the Supreme Court of Montana, in 1965, when it said:

"It seems only fair that the transportation company be allowed to require that the compensation paid bear a reasonable relation to the risk and responsibility assumed."

To permit the carrier to limit its liability as appellant attempts to do here simply permits it to obtain commensurate compensation for the responsibility assumed and to require the passenger, who alone knows the value of his baggage, to declare a value in excess of the limited amount and pay the charge therefor if he is not willing to have his baggage so transported with liability for its loss so limited.

At times here material, appellant's limitation of liability by the tariff had been duly filed with the Interstate Commerce Commission and was in effect. The appellee received notice of the limitation thus established, as a matter of law, when said notices were posted at the place where she bought her ticket and checked her baggage and she was given and accepted the baggage check upon which was plainly stated that liability for loss of her baggage was limited to $25.00. It was so held by the United States Supreme Court in New York Central & Hudson River Railroad Company v. Beaham, 242 U.S. 148, 152, 37 S.Ct. 43, 44, 61 L.Ed. 210, 216. Mrs. Beaham presented her trunk to the baggage department and received a check or receipt which on its face recited that liability for baggage was limited to $100.00, unless a greater value was declared by the passenger and excess charge therefor paid. The court said:

"In the circumstances disclosed, acceptance and use of the ticket sufficed to establish an agreement prima facie valid which limited the carrier's liability. Mere failure by the passenger to read matter plainly placed before her could not overcome the presumption of assent."

In 1948, the Supreme Court of Oklahoma in All American Bus Lines, Inc., v. Schuster, 199 Okl. 628, 189 P.2d 412, held, in effect, that under the facts of this case the carrier's liability was limited to $25.00 and the passenger's failure to read the statement of limitation printed on the claim check did not excuse him from the legal effect thereof.

In Missouri Pacific Railroad Company v. Prude, 265 U.S. 99, 101, 44 S.Ct. 450, 68 L.Ed. 919, 928, the court said:

"Acceptance and use of the ticket sufficed to establish an agreement, prima facie valid, which limited the selling carrier's liability. Mere failure of the passenger to read matter plainly placed before her cannot overcome the presumption of assent."

■ In the case now under consideration the baggage checks which Miss Stevens received and had in her possession and the many posted signs gave notice of the limited liability for loss of her baggage and, under authority of the cited cases, her assent thereto was presumed. The court erred in not limiting her recovery to $25.00.

New York, New Haven and Hartford Railroad Company v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500, 1507, was decided by the United States Supreme Court in 1953. It is relied upon by appellee and it evidently was relied upon by the trial court. In the Nothnagle case the passenger gave her bags to a redcap who lost them. The court in 346 U.S. at page 135, 73 S.Ct. at page 990, 97 L.Ed. at page 1507 said:

"But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained * * *.

Binding respondent by a limitation which she had no reasonable opportunity to dis-

cover would effectively deprive her of the requisite choice * * * ".

The court there held that the carrier did not limit recovery to the amount established by its tariff because it failed to afford its passenger a reasonable opportunity to (1) learn of such limitation and (2) declare a higher value. In that case the passenger's suitcase was taken by a redcap. He did not give the passenger a baggage check. Therefore, she was not given the notice and the opportunity to learn of the limitation and declare a higher value than was given to Miss Stevens when she received and accepted two baggage checks with notices printed thereon that liability for the baggage was limited to $25.00 and that by acceptance thereof she agreed to make no claim in excess of $25.00 for loss of property checked on one full fare ticket. The opinion indicates that no signs advising of such tariff limitation were posted. In addition to such distinguishing facts, the court recognized the correctness of the Hooker decision and further distinguished them as follows:

"The excepted 'baggage carried on passenger trains' refers solely to free baggage checked through on a passenger fare. See e. g., Boston & Maine R. Co. v. Hooker, 1914, 233 U.S. 97, 117, 34 S.Ct. 526, 530, 58 L.Ed. 868. It cannot apply to redcap service for which the carrier exacts a separate charge because the cost of providing that facility is not an element in the determination of passenger rates * * *. The limitation must therefore qualify under the proviso as part of an authorized schedule of rates graduated according to property valuations in writing."

In the Nothnagle case there was no baggage check given the passenger containing notice of the limitation and no indication that signs were posted as was done in this case. If such redcap baggage had been classified as "baggage carried on a passenger train", and notice of limitation and opportunity to declare excess value had been established, as they were in this case, appellant says,

perhaps correctly, the court would have followed the Hooker case. Certainly, such distinguishing features were numerous and material.

In Cray v. Pennsylvania Greyhound, Lines, 177 Pa.Super. 275, 110 A.2d 892, 896, a limiting tariff had been properly filed, reference thereto was made upon the passenger's baggage check and signs were posted in the bus terminal, as they were in this case. But, there the passenger asked the bus agent if it was necessary to insure her baggage and was informed that it was not. The plaintiff relied upon the Nothnagle case. The Pennsylvania court said it was distinguishable upon the facts because it did not involve free baggage checked through on a passenger's fare. In discussing the requirement in the Nothnagle case that passengers be given a reasonable opportunity to choose between higher or lower liability that court said:

"The requirement that a passenger must be offered a fair opportunity to choose between higher or lower liability before an interstate carrier can limit recovery for loss of baggage to an amount less than the actual loss sustained does not require that the passenger be actually informed that a choice of rates is available".

"Where, as here, a motor vehicle carrier engaged in interstate commerce has duly filed tariff regulations with the Interstate Commerce Commission which include a provision limiting the carrier's liability for loss of free baggage to $25.00, unless a higher valuation is declared and paid for, has referred to such tariff regulations on its transportation tickets and baggage checks, and has posted prominent notices of the limitation of its liability in conspicuous locations on the windows * * * we hold that such carrier has provided a fair opportunity for passengers to choose between higher or lower liability by paying a correspondingly greater or lesser charge; and the limitation of liability contained in its published

tariff regulations cannot be waived by the statement of a baggage agent to a passenger that it is not necessary to insure her baggage * * * ".

In Shirazi v. Greyhound Corporation, 401 P.2d 559, the Montana court held that the Nothnagle requirement that the shipper be given a reasonable opportunity to discover the limitation and declare a higher value did not require actual notice of the limitation. In Shirazi the passenger could not read English but, under a fact situation relative to notice comparable to that given in this case, it was held that the passenger had been given reasonable notice of the limitation and reasonable opportunity to declare a greater value.

In Twentieth Century Delivery, Inc., v. St. Paul Fire & Marine Ins. Co., 242 F.2d 292, it was contended that the Nothnagle decision controlled. The court stressed the fact that in the Nothnagle case there was not even a baggage check with notice of the limitation. That court said that the Nothnagle decision suggested that the situation of the carrier would have been reversed had the baggage in that case been checked free on the passenger's fare.

Appellee admits the Nothnagle case is not within the first passenger baggage provision of 49 U.S.C.A., § 20(11), but says there is no difference between the law applicable to its first and second provisions. Appellee says that although the Nothnagle case did not overrule the Hooker decision it condemned it to the grave by distinctions; that it was decided before the 1916 Cummins Amendment and that it had been foreshadowed by lower court decisions such as Mickey Finn Clothes v. Yale Transport Corp., 175 Miss. 242, 23 N.Y.S.2d 84. Appellee urges that the Nothnagle decision has been followed and · construed as announcing a rule of general application, not just the law applicable to redcap service; that its requirements are applicable to free passenger baggage; that in Holmes v. National Van Lines, Inc., 55 Wash.2d 861, 350 P.2d 864, the Washington court noted

that any limitation must be brought to the customer's attention and a choice given to contract with or without limitation; that the court in Mitchell v. Union Pacific Railroad Co., 9 Cir., 242 F.2d 598, 604, "a free passenger baggage case", quoted from Nothnagle and said:

"While we recognize that the facts in Nothnagle were not the same as those in the instant case, we believe that the principles there announced should guide us here."

And that in the air passenger baggage decision in Odom v. Pacific Northern Airlines, Inc., 393 P.2d 112, 115, the Supreme Court of Alaska cited Nothnagle for the proposition that all common carriers could limit their liability by granting their passengers a fair opportunity to choose between higher or lower liability by paying a correspondingly higher or lower charge. Appellee cites Vandenbergh v. Allied Van Lines, Inc., 137 Mont. 327, 351 P.2d 537 and Norman v. Burnham's Van Service, La.App., 73 So.2d 640, both of which arose out of shipment of household goods, not free transportation of baggage on a passenger's ticket. She says that in Vandenbergh the carrier's limited liability was not allowed but in Norman it was; that the facts differed but both applied the Nothnagle decision; that in the Vandenbergh case the court said that she made no representation as to the value of the goods because she was not given a fair opportunity to make one; that she was not given the choice which the Nothnagle case says is a condition precedent to the carrier's right to limit liability. Appellee says that cases cited by appellant upheld the tariff provision limiting liability only after the court had applied the Nothnagle decision and found, as a fact, that reasonable notice and fair opportunity had been given the passenger. Appellee says the Nothnagle decision governs free baggage cases and requires a fact finding that the passenger was given a reasonable notice of the limitation and a fair opportunity to choose whether

she would declare a higher value and pay an additional charge and that they are questions of fact. Appellee discusses the undisputed facts with reference to the posted notices in bus station and the statements on the baggage checks given to appellee and says that whether Miss Stevens was given reasonable notice of the $25.00 limitation and a fair opportunity to declare a higher value were fact questions. Appellee thus squarely and forcefully presents the contrary of appellant's contention that the undisputed facts show such notice and opportunity as a matter of law. The 1914 decision of the United States Supreme Court in Boston & Maine Railroad v. Hooker, 233 U.S. 98, 34 S.Ct. 526, 58 L.Ed. 868, 874 has never been overruled. It was there held that a regulation in the published tariffs of an interstate carrier filed with the Interstate Commerce Commission limiting its liability for lost baggage to $100.00, unless a greater value was declared by the passenger, was binding upon the passenger, regardless of the passenger's lack of knowledge of such regulation. The rule is stated in 13 C.J.S. Carriers § 877, page 1706, as follows:

"Regulations filed with Interstate Commerce Commission. Under the Interstate Commerce Act as amended carriers must include in the schedule of rates filed regulations affecting passenger's baggage and the limitations of liability; and where a regulation limiting liability is so filed it is binding on the carrier and on the passenger, even though the passenger has no knowledge thereof."

In Robidoux v. Chicago & Northwestern Railway Company, 113 Neb. 682, 204 N.W. 870, 41 A.L.R. 446, 449, the Supreme Court of Nebraska held that interstate passengers are charged with notice of the limitation of liability for checked baggage as disclosed by published tariffs on file with the Interstate Commerce Commission, regardless of the passenger's lack of knowledge thereof. In Cray v. Pennsylvania Greyhound Lines, 110 A.2d 892, it was held, in 1955, that federal statutes required interstate carriers to include in schedules of rates filed regulations affecting passenger's baggage and limitations of liability and where regulations limiting liability for loss of baggage checked on a passenger's ticket were filed with the Interstate Commerce Commission such limitation was binding on the passenger, even though he had no knowledge thereof. In Continental Bus System v. Ansel, Tex.Civ. App., 253 S.W.2d 959, it was held that under provision of 49 U.S.C.A. § 319, a bus company could thus limit its liability for loss of a passenger's baggage in interstate commerce.

■ Notwithstanding, the rule thus established appellee contends and the trial court apparently found that said authorities had been overruled by the 1953 decision of the Supreme Court of the United States in New York, New Haven & Hartford R. R. v. Nothnagle, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500. In that case the railroad company did contend that its liability for a passenger's baggage lost in interstate commerce was governed by a tariff schedule filed with the Interstate Commerce Commission which limited recovery for baggage loss to $25.00, unless the passenger, in writing, declared a higher value. The trial court found that, although the passenger had not declared a greater value, she had neither actual knowledge of such limitation nor was she notified of such limitation of liability *"by a legend on a baggage receipt or on a posted sign."* That opinion, particularly the notes thereto, clearly distinguish that decision from others which follow the rule that has been recognized since the Hooker decision. There the baggage was delivered by the passenger to a redcap. She received no receipt for her bag which was lost. Here, Miss Stevens received a baggage check with notice printed thereon of the limitation of liability for loss of her baggage and she purchased a ticket in a room where four posted signs gave her notice thereof. In the Nothnagle case, as shown by the quotation above from the Su-

**448**

preme Court's opinion, Mrs. Nothnagle was not notified of the limitation by "a baggage receipt or (on) a posted sign." In Nothnagle, no notification nor opportunity was shown. Here, ample notice and opportunity was shown by the undisputed evidence. In the course of the Nothnagle opinion it was further distinguished by statements that limitation of liability was permitted by a Federal Statute under an exception that, at the time of the Hooker decision, permitted such limitation only as it applied to baggage carried on passenger trains which the court said referred, solely, to free baggage checked through on a passenger fare. The court expressly held that such statutory exception permitting limitation of liability could not apply to redcap service because the cost of providing that facility was not an element in determination of passenger rates. Note 12 to that decision, which may be found in 346 U.S. at page 136, 73 S.Ct. at page 990, 97 L.Ed. at page 1507, expressly states that the Hooker decision and the decision in New York Central, etc. v. Beaham, 242 U.S. 148, 37 S.Ct. 43, 61 L.Ed. 210, could not control the decision in the Nothnagle case because they dealt with free baggage checked through on a passenger ticket and the carrier in each case had given some notice of its limitation of liability. Such distinguishing features were clearly pointed out in the annotation of the Nothnagle case in 32 A.L.R.2d 640. Such distinction is again clearly pointed out by the 1957 decision in Twentieth Century Delivery, Inc. v. St. Paul Fire & Marine Ins. Co., 242 F.2d 292, 300. The filing of such tariff, the posting of the signs and delivery and acceptance of the baggage receipts, about which there is no dispute, as a matter of law, afforded appellee a fair opportunity to discover the limitation and to choose whether she would declare a higher value and pay a charge therefor, if such limitation was not acceptable to her. Under the undisputed facts appellee was limited to a recovery of $25.00. The judgment is reversed with instruction to render judgment for appellee for only $25.00.